## City of Friend v. Fred N. Burleigh, Executor.

Filed February 2, 1898.   No. 7777.

1. **Death by Wrongful Act:** Petition. A petition in an action based on chapter 21, Compiled Statutes, which avers that the defendant by his wrongful act, neglect, or default caused the death of a person, that the plaintiff is such person's duly-appointed personal representative, and that the deceased left a widow and children, states a cause of action.

2. **Evidence:** Declarations. A declaration, to be a part of the *res gestæ*, need not necessarily be coincident in point of time with the main fact proved; but such fact and the declaration concerning the same must be so clearly and closely connected that the declaration in the ordinary course of affairs can be regarded as the spontaneous explanation of the fact.

3. **Death by Wrongful Act:** Evidence: Declarations. Where the negligence of a city causes the death of one, and his personal representative sues such city to recover for the benefit of the widow and next of kin of the deceased damages to compensate them for the pecuniary loss they have sustained by reason of his death, the exclusion from evidence of the declaration of the deceased that his injury was the result of his own carelessness, *held* not prejudicial.

4. ——: Carlisle Tables. In such suit the "Carlisle tables" are admissible in evidence for the purpose of showing the expectancy of life of the deceased and to admeasure the pecuniary loss to his widow or next of kin resulting from his death.

5. **Executors:** Assets of Estate. Such a cause of action is not an asset of the estate of the decedent.

6. **Negligence.** The doctrine of comparative negligence is not in force in this state.

Error from the district court of Saline county. Tried below before Hastings, J.   *Affirmed.*

*J. D. Pope, E. E. McGintie, F. I. Foss,* and *W. R. Matson,* for plaintiff in error.

*Charles O. Whedon* and *J. Palmer, contra.*

Ragan, C.

On the night of December 4, 1890, David B. Burleigh, while on his way to his residence in the city of Friend,

stepped or fell off a sidewalk in said city, at a point where the walk crossed a ravine some ten feet deep and fifty feet wide, receiving certain injuries from such fall from which he subsequently died. In the district court of Saline county his executor brought this suit against the said city of Friend to recover the pecuniary damages which, he alleged, the deceased's widow and next of kin had sustained by his death; the basis of the executor's action being that the proximate cause of Burleigh's death was the negligent failure of the city to provide the sidewalk, where it crossed said ravine, with railings, or to keep displayed at night on said walk at said place some light or signal. The executor had a verdict and judgment, and the city has brought the same here for review on error.

1. The first argument is that the petition does not state a cause of action. The gist of this contention is that the facts stated in the petition do not show that the widow and next of kin of the deceased have sustained any special pecuniary loss by reason of his death. The petition alleges that the deceased at the time of his death was fifty-eight years old; that he was before the injury a strong and vigorous man; that he was engaged in mercantile business, and that he left surviving him a widow and six children, to whom he devised his property. The action is brought under Compiled Statutes, chapter 21, corresponding to Lord Campbell's Act, and giving to a personal representative an action on behalf of the widow and next of kin for pecuniary injuries by them sustained through the death of the decedent where such death has been caused by the wrongful act, neglect, or default of another under such circumstances that the person injured might himself have maintained an action. In *Burlington & M. R. R. Co. v. Crockett*, 17 Neb. 570, it was held that in such cases the petition must allege that there survived a widow or next of kin. Clearly so, because if there were no persons entitled to the proceeds of the action there could be no such proceeds. There could

be no pecuniary loss unless there was some one within the designated class to sustain it. In *Anderson v. Chicago, B. & Q. R. Co.*, 35 Neb. 95, the question was one of evidence and not of pleading, and it was held that the jury was warranted in returning a verdict for an insignificant sum, as the evidence did not show a pecuniary loss. There the next of kin were adult brothers and sisters and the deceased was not shown to have so conducted himself as to warrant an inference that his continued existence would have been for their pecuniary advantage. There was no legal obligation in their favor. In *Kearney Electric Co. v. Laughlin*, 45 Neb. 390, the petition alleged that the deceased left a widow and certain children and that they were wholly dependent upon him for support. This was held sufficient. In *Orgall v. Chicago, B. & Q. R. Co.*, 46 Neb. 4, it was held that a petition must show that the beneficiaries sustained a pecuniary loss. There again the next of kin was one not legally dependent upon the deceased for support. On the contrary, the deceased was the daughter of the next of kin. The rule deducible from these cases, as well as from the weight of cases elsewhere, is that the petition must show facts from which a pecuniary loss is inferable. In the case of collaterals or others not legally dependent upon the deceased, at least where they are not heirs at law, facts must be pleaded showing an actual pecuniary interest in his life. Where, however, it is pleaded that the next of kin sustain such a relationship to the deceased that the law imposes upon him a duty to support them and that practical ability existed to enable him to perform that duty, a pecuniary interest is pleaded. Its extent is a question for the jury. Here the allegations of good health of the deceased, that he was actually engaged in business, and that he left a widow and children, are sufficient to answer the requirements of any of the cases.

2. On the trial the city offered to prove that Burleigh, after his injury, stated that his injury was the result of

his own carelessness and that nobody was to blame for it but himself.  The refusal of the district court to permit this evidence is the second assignment of error argued here.   It is first insisted that the evidence offered was competent as part of the *res gestæ*.   This term means a thing or things done in and about—as a part of—the transaction out of which the litigation in hand grew and on which transaction such litigation is based.  (*Collins v. State*, 46 Neb. 37.)   And in *Missouri P. R. Co. v. Baier*, 37 Neb. 235, it was held: "A declaration, to be a part of the *res gestæ*, need not necessarily be coincident in point of time with the main fact proved.   It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause."  In this case the declarations of the decedent made a few moments after the accident and explanatory of it were held admissible as part of the *res gestæ*.   In *Omaha & R. V. R. Co. v. Chollette*, 41 Neb. 578, the remarks of a brakeman on the train, made at the time an accident occurred, as to the cause of the accident, were held admissible as *res gestæ*. In *Collins v. State, supra*, the declarations of the deceased made two and one-half hours after he was shot, as to who shot him, were held not admissible as *res gestæ*.   In the case at bar the deceased was injured on the night of December 4, 1890, and died on the 19th day of the following February.   The witness by whom it was proposed to prove the declarations of the deceased visited him several times between the date of his injury and his death; spent four nights with him.   At some of these visits the deceased made the declaration offered in evidence, but it does not appear how soon after the injury the declaration proposed to be proved was made.   Under these circumstances we think that the injury sustained by the deceased and his declarations concerning the same were not so clearly and closely connected that the declarations, in the ordinary course of affairs, can be regarded as the unpremeditated explanation of the injury, and

therefore the declaration was not part of the *res gestæ* and on that ground was properly excluded. It is not necessary to determine whether this declaration of the deceased was admissible in evidence on any other principle, since the record discloses that the court permitted witnesses for the city to detail alleged conversations had with the deceased, in which he stated all the facts relating to his injury. The city, then, was not prejudiced by the exclusion from the jury of the alleged declaration of the deceased that his injury was the result of his own negligence.

3. A third argument is that the court erred in permitting to be introduced in evidence the Carlisle tables of expectancy of life. It is not claimed that these tables were not of themselves competent evidence, but it is insisted that there is no evidence to show that the benefit of the services or earnings of the deceased, had he lived, would have inured to his next of kin, and for that reason the tables were incompetent. The expectancy of the deceased at the time of his death was fifteen years. At that time he was engaged in mercantile business, which seemed to have been a prosperous one, his sales amounting to about $9,000 a year; and his expenses from $1,000 to $1,500 a year. His expenses included the support of his family. Prior to his death he lived with his family. If the family consisted of simply the husband and wife, then upon the death of the husband the widow was deprived of the profits and earnings which the husband made and which prior to his death he devoted to her support and maintenance. Of course the administrator was entitled to recover only the amount of the pecuniary loss which the widow and next of kin had sustained by reason of the death of the deceased, and these Carlisle tables were admissible in evidence for the purpose of showing the number of years which the deceased would probably have lived and to admeasure the loss to his widow and next of kin resulting from his death. If it were true that the next of kin of the deceased, before his

death, had married and moved away from the family and were supporting themselves, and all the earnings and profits of the deceased were devoted to his wife, then the administrator would recover for the benefit of the widow a sum which would recompense her for the pecuniary loss resulting to her from her husband's death, and this loss would be the support and maintenance measured in money furnished the wife by the husband. The fact, if it be a fact, that the next of kin were supporting themselves during the life of the deceased and that none of his earnings and profits were devoted to their support would not render the Carlisle tables incompetent evidence.

4. A fourth argument of the city is that the court erred in refusing to permit it to prove that prior to the accident to Burleigh the sidewalk in question was in constant use by the citizens of Friend both day and night and that no other accident was ever known to happen on that walk. We do not see how this evidence would have tended to prove or disprove any issue in the case.

5. A fifth argument of the city is that the district court erred in refusing to permit it to prove that the inventory of the property of the decedent filed in the county court of Saline county by the executor did not contain the claim sued for here. There was no error in this ruling of the court. This cause of action did not belong, and does not belong, to the estate of the decedent. It belongs to his widow and next of kin, and was not and is not, and can never become, an asset of his estate.

6. The city requested the court to instruct the jury as follows: "If the widow and children were as well off financially after the death of said Burleigh as before his death, then the plaintiff is not entitled to recover." The court added to this instruction the following: "On account of the death of David B. Burleigh." The city now complains that the court erred in modifying the instruction. The modification made by the court to the in-

struction did not change its force and effect. The instruction was substantially the same after it was modified as before. We doubt whether the city was entitled to such an instruction, but if there was any error in giving this instruction it was an error committed in favor of the city and of which it cannot complain.

7. Another argument of the city is that the court erred in refusing to give the following instruction to the jury: "You are further instructed that the deceased was bound to exercise ordinary care for his personal safety while passing along the streets of the defendant; and if the jury find from the evidence that plaintiff's slight negligence, if any, contributed directly to the alleged injury, then you will find for the defendant." The court did not err in refusing to give this instruction. Such expressions as "slight negligence" and "slight want of ordinary care" should not be used in instructions, as they tend to obscure and confuse what should be stated in plain and concise language. The doctrine of comparative negligence is not in force in this state. Our courts do not recognize degrees of negligence. The rule is that if a person himself in the exercise of ordinary care is injured through the negligence of another he may recover; but if his own negligence contributed to or was the proximate cause of the injury he cannot recover. (*Village of Culbertson v. Holliday*, 50 Neb. 229.)

The foregoing embrace all the assignments of error which we think it worth while to notice. There are other complaints about the action of the district court in giving and refusing to give certain instructions. We have examined carefully the entire record and it must suffice to say that we think the court committed no error of which the city can complain. The judgment of the district court is

AFFIRMED.