HON. T. L. NORVAL,  } JUDGES.
HON. J. J. SULLIVAN, }

HON. ROBERT RYAN,     }
HON. JOHN M. RAGAN,   } COMMISSIONERS.
HON. FRANK IRVINE,    }

---

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v.
MARGARET E. OYSTER, ADMINISTRATRIX.

FILED FEBRUARY 23, 1899. No. 8642.

1. **Death by Wrongful Act: WHO MAY SUE.** Under chapter 21, Compiled Statutes, an action for the wrongful death of a person may be maintained by his personal representative, where the person deceased left surviving him some one belonging to the class for whose benefits the statute was enacted, who has sustained pecuniary loss by his death.

2. ———: DAMAGES. The damages recovered in such an action are assets for proper distribution to "the widow and next of kin" of the decedent.

3. ———: PETITION: CONTENTS. A petition under Lord Campbell's act should disclose the names of all the beneficiaries, but if the names of the surviving minor children of the decedent who were dependent upon him for support are averred, the omission to

5                    (1)

allege whether or not he left a widow will not render the pleading bad on demurrer.

4. **Pleading**: Harmless Error. One cannot predicate error on the refusal to require the pleading of the opposite party to be made more definite and certain where prejudice has not resulted from the ruling.

5. **Review**: Assignments of Error. An assignment in a petition in error that "the verdict of the jury is not sustained by sufficient evidence, and is not in accord with the evidence and instructions," is sufficiently definite and specific to require the appellate court to review the evidence preserved in the bill of exceptions to ascertain whether the same supports the finding and judgment.

6 **Master and Servant**: Negligence: Burden of Proof. The burden is on the master, if it claims it, to show that the injuries received by a servant were caused by the negligence of a fellow-servant.

7. ———: ———: Pleading. Whether such a defense must be specifically pleaded to be available is not decided.

8. ———: ———: ———. A general allegation in an answer of contributory negligence on the part of the plaintiff is good as against a demurrer *ore tenus*.

9. ———: ———: Rules. Rules of a railway company are not binding on an employé who it is not shown had notice or knowledge thereof.

10. ———: ———: Res Gestæ. The testimony of a witness describing the positions of decedent and the engine shortly after the accident which resulted in the death of the plaintiff's intestate was admissible as *res gestæ*.

11. **Instructions**. A party cannot predicate error upon the giving of a vague instruction, unless he has requested a proper one.

12. ———: Review. Upon review instructions should be considered as an entirety.

13. **Railroads**: Appliances: Negligence. A railroad company is only required to exercise reasonable and ordinary care and diligence in furnishing its employés reasonably safe road-bed, machinery, and appliances for the operation of its road. The law does not impose the absolute duty of providing a reasonably safe roadway, but makes the company liable for negligence in that regard.

14. **Instructions**: Conflicting Statements. An erroneous instruction is not cured by merely giving another instruction stating the law correctly on the subject.

15. **Jurors**: Private View of Premises: Harmless Error. In an

action against a railroad company for wrongfully causing the death of plaintiff's intestate misconduct of jurors in visiting and examining the locality of the accident, without permission of the court or knowledge of the parties, is not ground for setting aside the verdict, where it is disclosed that such view did not influence the finding.

ERROR from the district court of Phelps county. Tried below before BEALL, J. *Affirmed.*

*J. W. Deweese, W. S. Morlan,* and *F. E. Bishop,* for plaintiff in error.

*Abbott, Selleck & Lane* and *S. A. Dravo, contra.*

NORVAL, J.

Action by Margaret E. Oyster, administratrix of the estate of Granville R. Oyster, deceased, against the Chicago, Burlington & Quincy Railroad Company to recover damages for negligently causing the, death of decedent. Plaintiff obtained a verdict in the sum of $5,000, and the defendant has instituted this proceeding for the purpose of securing a reversal of the judgment entered thereon.

A brief reference to the issues presented by the pleadings in the cause will aid in an understanding of the questions urged upon our attention. The petition avers the appointment and qualification of the plaintiff as administratrix of the estate of Granville R. Oyster, deceased; the incorporation of the defendant and the operation by it of a line of road extending from the Missouri river through the city of Holdrege to the east line of the state of Colorado; the employment of decedent by the defendant as a locomotive engineer on and for some time prior to July 29, 1894; that on said date, in the proper and careful discharge of the duties of his said employment, and under the directions of defendant and its officers and agents, the said Oyster was running the engine used to pull the regular night passenger train from McCook to Hastings, and when said engine arrived at the city of Holdrege it ran into an open switch, left the rails of the

track, overturned, violently throwing said Oyster down under the engine, breaking his leg, bruising and scalding his flesh, and from which injuries he died the second day thereafter; that said accident was occasioned through no fault, failure of duty, or negligence of decedent, but by reason of the defendant having negligently, carelessly, and wrongfully left open said switch without proper, usual, and customary display of signal lights or other means of warning so as to advise him of the open switch and the condition of the road-bed, and that Oyster left surviving him six minor children, whose names and ages are stated in the petition, who were wholly dependent upon him for support, and by reason of his death are left helpless and destitute. The defendant filed a motion to require the plaintiff to make her petition more definite and certain by alleging therein whether the intestate left surviving him any widow. This motion was denied by the court, whereupon a general demurrer to the petition was interposed and overruled. An answer was filed which admits the incorporation of the defendant, and the employment of plaintiff's intestate; denies the appointing of Margaret E. Oyster as administratrix, and avers "that the accident, whereby the death of Granville R. Oyster was caused, was the result of his own carelessness, negligence, and disobedience of the rules and regulations of the defendant governing his conduct as a locomotive engineer, and that said accident was caused without any fault or negligence on the part of the defendant." It is further pleaded in the answer that the person deceased left at the time of his death surviving him his wife, the said plaintiff Margaret E. Oyster; that said action is not brought for the benefit of the widow, and hence there is a defect of parties plaintiff and the action should abate and be dismissed. The answer closes with a general denial of each averment contained in the petition, except those previously admitted. The reply admitted that Margaret E. Oyster was the decedent's widow, and then denied all the other allegations in the answer.

The petition contains no averment as to whether or not Oyster left surviving him any widow, and it is argued from this that no cause of action is stated against the defendant, and that the motion to make the petition more definite and certain in that particular should have been sustained. The action was under chapter 21, Compiled Statutes, called "Lord Campbell's Act." Section 2 of said chapter declares: "That every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars." This section has more than once been considered by this court, and the uniform holding has been that an action for the wrongful death of a person cannot be maintained where it is not disclosed that the decedent left surviving him some one belonging to the class for whose benefit the statute was enacted, and who has sustained pecuniary loss by the death of the deceased person. (*Anderson v. Chicago, B. & Q. R. Co.*, 35 Neb. 95; *Kearney Electric Co. v. Laughlin*, 45 Neb. 390; *Orgall v. Chicago, B. & Q. R. Co.*, 46 Neb. 4; *City of Friend v. Burleigh*, 53 Neb. 674; *Omaha & R. V. R. Co. v. Crow*, 53 Neb. 747.) The damages recovered by a personal representative of a deceased person for the wrongful death of the intestate are assets for the proper distribution to "the widow and next of kin," and are not subject to the payment of the debts of the decedent. A petition therefore under Lord Campbell's act is defective which fails to disclose that the person deceased left a widow or next of kin

depending upon him for support. (*Burlington & M. R. R. Co. v. Crockett*, 17 Neb. 570.) Manifestly it was not the intention of the legislature to give an action under said act only where both a widow and next of kin survive the person deceased. The action is well planted if there exists either a widow or next of kin on whom the law confers the right to be supported by the person killed. It is evident this is the meaning of the section quoted, and the petition in this cause disclosing that Granville R. Oyster left him surviving six minor children, who were depending upon him for maintenance, the action was instituted for the benefit of persons within the class named in the statute. The demurrer was properly overruled.

The statute authorizes the action to be brought for the benefit of the widow and next of kin, and the petition should disclose all beneficiaries,—that is, whether the decedent left a widow or next of kin, or both; but it is very evident that the defendant was not prejudiced by the denial of its motion to require the plaintiff to aver in the petition whether a widow survived the intestate, for the reason the defendant subsequently pleaded in its answer that Margaret E. Oyster, who sued as administratrix, was the widow of the decedent, and the reply admitted such averment to be true. So all the beneficiaries were named in the pleadings, and the existence of a widow was not a controverted point in the case. Certainly the fact that one of the beneficiaries was not mentioned in the petition could militate only against the plaintiff, and that in the assessment of the amount of damages. There is no defect of parties plaintiff. Margaret E. Oyster was the sole administratrix of the estate, and the action was properly brought by her in her representative capacity for the benefit of those in whose behalf it was prosecuted. She was the personal representative of the intestate, and alone could maintain the action. The widow or next of kin were not necessary parties thereto, but the damages recovered inured to their exclusive benefit,

The verdict is assailed as being against the evidence. Counsel for the administratrix insist that this question is not properly presented for review by the petition in error. The tenth assignment therein is as follows: "The verdict of the jury is not sustained by sufficient evidence, and is not in accord with the evidence and instructions given." It is conceded that this would be a sufficient assignment in a motion for a new trial, but it is argued that it is too indefinite and uncertain for a pleading in this court. The rule is that alleged errors must be specifically pointed out in the petition in error, and that mere general assignments are unavailing. But the rule has never been carried to the extent now pressed by counsel. We have never required that the petition in error should specify the particular branch of the case, or the question of fact raised by the record, it is claimed the evidence was insufficient to sustain. We regard the objection now raised as entirely too technical and devoid of merit. The assignment is sufficiently definite to require the consideration of the evidence certified up in the bill of exceptions to ascertain whether the verdict is contrary thereto.

There is but little, if any, conflict in the evidence. It is disclosed that Granville R. Oyster, plaintiff's intestate, was an experienced and careful engineer, and had been in the employ of the defendant for several years preceding the accident, in charge of an engine drawing a regular passenger train between McCook and Hastings. On the night of July 29, 1894, he started on his regular run from McCook, reaching Holdrege on the regular schedule time, about 12:40 A. M. West of this last named station is a switch connecting the main line with a side track. This switch had been negligently left open, so that a train from the west would enter the side track, instead of remaining on the main line. The switch had been usually provided with a lantern to serve as signal to trainmen of the position of the switch. White lights were exposed if the main line was open for the passage of trains, while red lights were exhibited if the switch was thrown for

entering the side track. One of these lanterns, early in the evening of the accident, had been placed on the switch stand by a section-man, but the light had either been extinguished or had gone out three hours before, and was not burning at the time engineer Oyster reached it with his train, nor was any signal exposed to indicate that the switch was not closed, nor was any warning given that he was approaching danger. The night was dark and the train at the time was running at a moderate and reasonable rate of speed. When the train reached the switch, the engine on entering it was derailed, inflicting injuries upon Oyster, from the effects of which he soon thereafter died. Each and every averment in the petition is amply sustained by the evidence. The jury were justified in finding that the leaving of the switch open without any signal or warning advising the engineer of such fact was the proximate cause of the injury. (*Lake Shore & M. S. R. Co. v. Wilson*, 38 N. E. Rep. [Ind.] 343.) The defendant seeks to escape liability on two grounds: First, the accident was attributable to the acts of a fellow-servant; second, plaintiff's intestate was guilty of contributory negligence. These objections will now receive attention.

In the first place it should be stated that the claim that the accident was occasioned by the negligence of a fellow-servant of Oyster was not pleaded in the answer. The burden was on the defendant to establish the defense, and it well may be doubted whether it was available without being pleaded. (*Chicago & A. R. Co. v. House*, 50 N. E. Rep. [Ill.] 151; *Nicolaus v. Chicago, R. I. & P. R. Co.*, 57 N. W. Rep. [Ia.] 694; *Patterson v. Houston & T. C. R. Co.*, 40 S. W. Rep. [Tex.] 442.) The evidence, however, fails to reveal that it was a fellow-servant who locked the switch in question for the side track. It was shown that a train crew who had charge of a train which had arrived at Holdrege that evening over the Edgar branch had been using this side track and the switch in question, but it does not appear any one of said crew

left the switch open, which caused the accident. Moreover, the evidence adduced fails to establish that the employment and duties of those in charge of the Edgar train were such as to constitute them fellow-servants with plaintiff's intestate within the rule laid down in the decisions of this court on that subject.

As to the defense of contributory negligence counsel representing the plaintiff below insist that it was not pleaded in the answer, and hence must be disregarded here. There is no room to doubt that it is an affirmative defense, and when relied upon must be raised by suitable averments. This court, in harmony with the decisions in other jurisdictions, has decided that a general allegation of negligence in a petition is sufficient as against a demurrer. (*Omaha & R. V. R. Co. v. Wright*, 49 Neb. 456.) And by a parity of reasoning a general averment in an answer charging contributory negligence on the part of plaintiff is good, unless assailed by a motion to make more definite and certain. In the case at bar the answer, in general terms, as we have already seen, pleads that the negligence of plaintiff's intestate contributed to the injury, and but for which the accident would not have occurred. The answer not having been assailed by motion, it must be held sufficient to raise the defense of contributory negligence. The argument in support of this defense is that there being no light displayed on the switch stand it was the duty of Oyster to have stopped his engine, and his failure so to do was in direct violation of the rules of the company, and the cause of the injury. There was introduced on the trial, over the objections of plaintiff, a book entitled "Rules of the Transportation Department," which purports to have been issued by the general manager of the Burlington & Missouri River Railroad Company in Nebraska. Rule 65, as contained in said book, is in the language following: "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal, and the fact reported to the superin-

tendent." The evidence tending to prove that said rules, including the one quoted above, were promulgated by the proper officer of the defendant company is quite meager and unsatisfactory. But waiving this point, for the purpose of the present investigation, it is not disclosed by competent proofs that the decedent ever saw or knew of the rule above quoted, and which it is claimed he violated by failing to stop his engine before reaching the switch. The witness C. A. Dixon, called on behalf of the company, testified in a general way that the engineers under him have a book of rules and instructions which govern and control them in the operation of trains, but it was not shown by the witness, or by any one else, that Oyster had any knowledge of the existence of the rule in question. Objection to the admission as testimony of said rule was distinctly made on that ground at the time. The proposition is not only sound on principle, but is abundantly supported by authority, that rules of a railway company are not binding on an employé unless he has notice thereof, or the same have been brought to his knowledge. (*Alabama M. R. Co. v. McDonald*, 20 So. Rep. [Ala.] 472; *Louisville, N. A. & C. R. Co. v. Berkey*, 35 N. E. Rep. [Ind.] 3; *Atchison, T. & S. F. R. Co. v. Plunkett*, 25 Kan. 188; *Covey v. Hannibal & S. J. R. Co.*, 27 Mo. App. 170; 14 Am. & Eng. Ency. Law 908, 909.) It not having been established that the decedent was aware of the existence of the rule, manifestly he cannot be charged with contributory negligence in violating the same. Whether a party is guilty of contributory negligence is usually a question of fact, and from a perusal of this record we cannot say that the triers of fact were not fully warranted in finding that plaintiff's intestate was free from any negligence which contributed to the accident.

In the brief of the company it is stated that "the court permitted witness Daily (p. 15), Dr. Miller (p. 24), and Mrs. Oyster (p. 46) to testify as to Oyster's physical condition after the hurt, the extent of his bodily injuries,

and the length of time he was held under the engine and suffered pain," and it is urged that such testimony was erroneously admitted. An examination of the pages of the bill of exceptions indicated above reveals that no one of the witnesses named testified, against an objection, to the pain and suffering of the decedent. It is true the witness Daily described the position of Oyster under the engine, the length of time he was held there, and how the engine was taken off. This was a part of the *res gestæ*, and for that reason was competent evidence.

Dr. Miller, a physician and surgeon, was called to see Oyster shortly after the accident, and during the same night. The witness was permitted to answer but two questions, to which objections had been interposed by counsel for defendant, which questions, with the objections, and the answers made by the witness follow:

Q. What condition did you find Mr. Oyster in?

Defendant objects, as immaterial under the issues joined. Overruled. Exception.

A. I found him prostrate from an injury.

Q. What sort of an injury?

Defendant objects, as immaterial under the issues joined. Overruled. Defendant excepts.

A. He had a fracture of the small bone of the left leg. as well as extensive injuries to the soft tissues and muscles and flesh.

The witness further testified, without objection, that he remained with the patient continuously, and rendered him proper and necessary medical treatment, until death, and that Oyster died from the shock resulting from the injury.

Mrs. Oyster testified that she arrived at Holdrege the morning after the accident and remained with her husband until the evening of July 31, when he died. She testified, against objection of defendant, that she found her husband "just resting. He had not roused up from the accident, but did in a very few minutes."

It requires one with a keener perception than the writer

possesses to discover any prejudicial error in all this testimony, which merely showed the extent of decedent's injuries and how they occurred. The testimony did not unduly tend to excite the sympathy of the jury.

Some of the instructions to the jury given by the court at the request of the plaintiff are assailed as being erroneous. In the first three of these instructions the jury were told, in substance, that it was the duty of the defendant to use all reasonable care and foresight to provide such lights and signals for the switches as were necessary and reasonable for the safety of Oyster in the prosecution of his duties, and to exercise all reasonable care in inspecting and keeping in proper order and condition for use its lights, lamps, signals, and switches. The vice imputed to these instructions was that they did not inform the jury what constituted reasonable care. If the defendant desired the jury to be advised upon that point, it should have tendered an appropriate instruction, and requested the court to give it. Not having done so, it cannot predicate error upon the failure of the court to define what constituted reasonable care. (*German Nat. Bank of Hastings v. Leonard,* 40 Neb. 676; *Barr v. City of Omaha,* 42 Neb. 341; *Gran v. Houston,* 45 Neb. 813; *Carter White Lead Co. v. Kinlin,* 47 Neb. 409; *Ferguson v. State,* 52 Neb. 432.)

Instruction No. 4, given at the request of plaintiff below, reads thus: "You are instructed that the said Granville R. Oyster was not obliged to know or inquire beforehand whether or not the switch was properly placed, and whether or not the proper lights and signals had been placed, but in the absence of absolute knowledge to the contrary he had the right to assume that all that could reasonably be done to render the roadway safe had been done; there is an implied undertaking or obligation on the part of the defendant with its employés to see that all that can reasonably be done to make the road safe had been done." By this instruction the court did not purport or attempt to state principles which

should guide the jury in the determination of every feature of the case, but merely stated to the jury, in a general way, the obligations and duties resting upon the master relative to the furnishing of its employé with reasonably safe appliances for the performance of his duties, and that such employé had the right to assume, in the absence of the want of knowledge to the contrary, that the master has done all that could reasonably be required of him in that regard. So far as the instruction went the correct rule was enunciated therein. It did not purport to treat of the question of contributory negligence. That feature of the case was fully covered by other instructions in a more favorable way to the defendant than the law and facts warranted. The fourth instruction did not make it the absolute duty of the defendant to provide a safe road-bed and appliances. It obliged the company only to exercise reasonable care in that regard, and this the law required. The rule is that instructions must be construed together, and when thus interpreted they properly state the law, error cannot be predicated thereon. This principle has been so frequently stated by this court as to make the citation of the authorities in support thereof superfluous. It is said, in argument, that the instruction quoted abrogated and nullified the rule promulgated by the company for the guidance of Oyster, the observance of which on his part would have saved his life. There are two answers to this contention. The decedent was not bound by the rule in question, since it was not shown that knowledge thereof was ever brought home to him. Again, by the third instruction given at the request of the defendant the jury were informed that if the accident was occasioned by reason of Oyster disregarding a rule of the company, the plaintiff could not recover. It follows that the defendant was not prejudiced by the giving of the fourth instruction.

In the sixth instruction the jury were told "that it was the duty of the defendant company to provide the said

Granville R. Oyster with a reasonably safe and clear road-bed upon which to operate said engine and train; and further, that the said Granville R. Oyster had a right to rely on the defendant's performing its duty in that regard, and if the defendant failed in this duty it would be liable to, and your verdict should be for, the plaintiff, unless you find that the said Granville R. Oyster knew that said road-bed was unsafe, or that the same was not clear in the manner in which it was usually operated, or that he was negligent or careless in the operation of said engine and train." We agree with counsel for defendant that the instruction was clearly erroneous, since it imposed upon the company the absolute duty of providing a reasonably safe and clear road-bed, while it owed no such obligation to its employés. All that the law required of it was, and the correct rule was also stated in the fourth instruction already quoted, that the defendant was required only to exercise reasonable and ordinary care to furnish a reasonably safe and clear roadway for the use of its employés. Under this instruction, if the defendant had not been guilty of negligence, but had exercised reasonable care in the premises, and the accident had occurred by reason of its road-bed having become recently unsafe, it made the company liable. The defendant is held accountable for the negligent performance of a duty, and the failure to exercise reasonable and ordinary care and diligence in furnishing its employés reasonably safe road-bed and appliances for the operation of its trains. (*Kansas City & P. R. Co. v. Ryan*, 59 Am. & Eng. R. Cas. [Kan.] 136; *St. Louis, I. M. & S. R. Co. v. Needham*, 69 Fed. Rep. 823; *Innes v. City of Milwaukee*, 70 N. W. Rep. [Wis.] 1065.) The instruction under consideration purported to cover the entire case. It told the jury, if they found certain things to exist, then the plaintiff was entitled to a verdict; hence the vice in this instruction was not, and could not be, cured by other portions of the charge. (*Farmers Bank v. Harshman*, 33 Neb. 445; *First Nat. Bank of Denver v. Lowrey*, 36 Neb. 290; *Barr*

*v. State*, 45 Neb. 458; *Metz v. State*, 46 Neb. 547.) My associates are of the opinion that the error was not prejudicial, since no other verdict would have been justified by the evidence. To this view the writer, reluctantly, yields his assent.

The record shows that during an intermission of the court certain jurors in the case visited and examined the locality of the track, switch, and appliance at the scene of the accident, after which they returned to the court-room and the trial proceeded without the defendant having knowledge of the occurrence. This was a gross irregularity on the part of the jurors, but not sufficient to cause the verdict to be set aside, for reasons now to be stated. The rule is that jurors must base their findings upon the evidence adduced on the trial, and may not make an inspection of the *locus in quo*, unless a view is authorized by the trial court. If a juror of his own accord, and without permission, visits and makes an inspection of the premises, or thing in dispute, it may be sufficient cause for vacating the verdict, but it will not have that effect if it is plain that such examination was not influential in obtaining the verdict. As stated by Start, J., in considering the same question in *Rush v. St. Paul City R. Co.*, 72 N. W. Rep. [Minn.] 733: "Not every unauthorized view of the *locus in quo* will require the setting aside of a verdict. Considerations of practical justice forbid it. It would be an injustice to deprive an innocent party of his verdict simply because there was a casual inspection of the premises by some of the jurors, or because they were familiar with them. If verdicts were set aside for such reasons, there would be no reasonable limits to litigation, especially in cities where the opportunities are great for jurors to personally view the locality of the accident under consideration.   *   *   * This rule must be given a reasonable operation, and not applied where there is only a possibility that the result was influenced by the alleged misconduct, but is to be applied where the court cannot determine with any

reasonable certainty whether the result was affected or not." In the case at bar there is no claim made that the plaintiff was guilty of any misconduct in the matter. It is not even suggested that she had any knowledge of the intended action of the jurors. There was no conflict in the evidence, so that a view of the place of the accident would assist those making it to apply the evidence or determine the credibility of the witnesses. It fully appears from the record that a view at the time it was taken could have been of no practical assistance in reaching a conclusion. It could not have influenced or affected the result. It follows that the judgment should be

AFFIRMED.