GRACE ARMSTRONG, ADMINISTRATRIX, APPELLEE, v. UNION STOCK YARDS COMPANY, APPELLANT.

FILED FEBRUARY 25, 1913. No. 17,039.

1. Negligence: EVIDENCE. Under the evidence in this case, stated in the opinion, the finding of the jury that the defendant was negligent is not so clearly wrong as to require a reversal upon that ground.

2. ———:  Contributory  Negligence:  Presumptions:  Evidence. There is a presumption that one in his right mind and in possession of his faculties will take ordinary precaution to avoid danger and injury.  The evidence of contributory negligence in this case, stated in the opinion, is not so conclusive as to require this court, as a matter of law, to hold that such presumption was overcome and contributory negligence established, contrary to the verdict of the jury. .

3. Damages: Presumptions: Review. There is no conclusive presumption of law that the present earnings of an able-bodied, active and intelligent young man, under 25 years of age, will not be increased in the future.  The court will not reverse as excessive a judgment for damages resulting from his death, solely upon the ground that such present earnings are so small.

Appeal from the district court for Douglas county: Howard Kennedy, Judge.  *Affirmed.*

*Frank T. Ransom,* and *Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*George E. Bertrand, McGilton, Gaines & Smith* and *Guy R. C. Read, contra.*

Sedgwick, J.

Thomas Armstrong was struck and killed by a car that was being switched by the defendant company.  His mother, Grace Armstrong, as administratrix of his estate, brought this action in the district court for Douglas county, alleging that the death of the deceased was caused by the negligence of this defendant.  Upon the trial there was a verdict and judgment for the plaintiff, and the defendant has appealed.

The defendant denied the allegations of negligence on its part, and alleged contributory negligence on the part of the deceased, and also contended that the verdict is excessive.

1. The first contention of the defendant is that the deceased, under the circumstances in this case, must be considered to have been a trespasser, or at least a mere licensee, upon the tracks of the defendant, and that there-

fore the defendant was not under the "obligation that might arise toward one injured at a recognized crossing or pathway, and there was no reason why appellant's switching crew should have anticipated that one of Cudahy's men would place himself in such a dangerous position on the track that he could not extricate himself, nor that Cudahy's men would not protect themselves against the movement of the cars on these tracks, for they used this track as a convenience to themselves in passing to and from the repair shop, and were required to exercise a high degree of care." This contention is clearly not justified by the evidence. The deceased was in the employ of the Cudahy Packing Company. That company had a covered inclosure in or near the switching yards of the defendant. Within this inclosure there was a shed with a narrow platform on each side thereof, used for the purpose of cleaning and icing the refrigerator cars of the packing company. Forty or fifty men were employed by the packing company in this service. This shed was a long narrow structure, used by the men in handling the ice and for similar purposes, and the platforms extending along each side were very narrow, and were high, to correspond with the height of the platform of the cars to be cleaned and iced. On each side of this shed there was a switching track, upon which the refrigerator cars were placed for cleaning and icing, and were located so near the platforms that the men could pass readily from the platforms to the cars. At the east end of the platform there was a step and "handhold" which the men used in passing to and from the shed and platform. The employees of the defendant company were engaged in switching coal cars; and, to use the expression of the witnesses, they "kicked" two cars along one of these tracks into the inclosure of the packing company; that is, the switching engine was pushing a train of several cars towards this switching track, and detached two of the forward cars and allowed them to run by their own momentum along this track into the said inclosure. The cars were running at a speed of three or four

miles an hour when they entered the inclosure. Several witnesses testified that neither coal cars nor any others, except refrigerator cars of the packing company, were expected or allowed upon the switch track within the packing company's inclosure, except upon rare occasions when a car was pushed there at the request of the packing company for the purpose of removing the accumulations from the cleaning of the refrigerator cars. Other witnesses testified that the defendant company was at liberty to use these tracks at its own convenience, and that it frequently did so. This evidence being somewhat conflicting upon this point, there is no doubt that the jury might find that the former proposition was established by the evidence.

It is very manifest from these conditions that the employees of the packing company were not trespassers in going to and from their cars over these tracks in this inclosure, nor were they licensees. They were acting in the regular course of their employment, and were entitled to that protection which should be accorded to men who were where it was not only their right, but their duty, to be. This is virtually conceded by the defendant in its answer in the admission that the deceased "received certain injuries on the premises of the Cudahy Packing Company at South Omaha, Nebraska, from which he died." Several witnesses testified, and the plaintiff contends, that the universal practice had been to push these refrigerator cars along the switch track with an engine that could be heard by the workmen, which enabled them to avoid danger; that these cars on this occasion moved without noise, and there was no lookout stationed to warn the workmen of danger; and that the defendant was negligent in this respect, and also in driving these unusual cars onto these tracks without notice or warning to the employees of the packing company. The jury must have found that the defendant was negligent in these respects; and, while the evidence at some points is somewhat conflicting, we cannot say that this finding is so clearly wrong as to require a reversal.

2. The defendant insists that the deceased was guilty of contributory negligence which was the proximate cause of his death. The deceased and another employee of the packing company, who was a witness at the trial, were on the platform referred to and near the end where the step and "handhold" were. This witness testified that the deceased had some of his tools with him, and was about to go from the shed, where he had been at work, to the tool house, a few rods distant. Some trivial conversation passed between the deceased and the witness, and immediately the witness heard a scream, and, turning, saw the deceased between the platform and the moving car, which was so close to the platform that the deceased was immediately killed. The theory of the defense is that the deceased, while engaged in this conversation with the witness, was careless of his own safety, and must have stepped from the platform without turning his face toward the direction from which the cars were coming, and without any precaution to avoid the accident which followed. In such case there is always the presumption that a man in his right mind and with the use of his faculties will take the ordinary precautions for his own safety. If the jury believed from the evidence that the manner of throwing this car into the inclosure was an unusual one, and not to be expected by the employees, that it moved with little, if any, noise, and that the car was so different in its construction from the refrigerator cars ordinarily placed upon those tracks, and so much lower, not being much above the high platform on which the deceased stood, that the deceased, if he had looked for the refrigerator car, might not have seen the car in question, they might reasonably have found that the presumption of ordinary care was not overcome by this evidence. It follows that the verdict was not so wholly unsupported by the evidence that we can say, as a matter of law, that it is clearly wrong.

3. The jury assessed the plaintiff's damages at $7,000. The defendant contends that this is grossly excessive and is not supported by the evidence. The deceased was a

young man not over 25 years of age. The interest on $7,000 at 6 per cent. would nearly, if not quite, equal the salary that he was receiving, so that, if those dependent on him for support were receiving his whole salary, $7,000 would be much more than the present worth of such benefits during the expectation of life of the beneficiaries, as shown by this evidence. We think, however, that this is not the true measure of the value of the life of the deceased to those beneficiaries. There is no certainty, and perhaps not even a probability, that the present earnings of an active young man of that age are the limit of his full capacity. What were the reasonable probabilities of his future earnings, and the future necessities of the beneficiaries? It is always difficult in such cases to determine the exact measure of the pecuniary loss, and this duty devolves upon the jury. They must take into consideration the condition of the parties and all of the circumstances disclosed by the evidence, and determine what sum will make full compensation for the loss sustained. We cannot say from this evidence that the finding of the jury in this respect is so clearly wrong as to require the court, as a matter of law, to overrule it.

The judgment of the district court is therefore

AFFIRMED.