DAVID E. MOSES, ADMINISTRATOR, APPELLEE, V. ALEXANDER L. MATHEWS, APPELLANT.

FILED APRIL 3, 1914. No. 17,595.

1. **Master and Servant:** NEGLIGENCE OF SERVANT: LIABILITY OF MASTER. A master is liable for the consequences of the negligent conduct of his servant, committed within the apparent scope of his employment, although the particular act complained of was unauthorized by the master, and was done in disobedience to his command.

2. **Pleading:** OBJECTIONS. Objection that a petition is not sufficiently specific comes too late after trial and verdict, where the general allegations are sufficient to support the relief prayed for.

3. **Death:** EVIDENCE: TABLES OF EXPECTANCY. The law does not require the production of tables of expectancy in order to prove the probable duration of human life. Such evidence, if tendered, is not conclusive, but may be received and considered with other evi-

dence in the case bearing upon the question of the probable continuance of life of the injured person.

4. **Appeal: Death: Damages.** In an action to recover for the loss to a husband of the services of a wife, it is not essential that the exact money value per day, week or month, of her services be proved with mathematical certainty. If the wife is able to perform ordinary household duties, the lack of such services constitutes an element of damages. Ordinarily, the matter must be left to the good judgment and ordinary common sense of the jurors, considering the circumstances of each case, and, unless the verdict is manifestly unjust and excessive, it will not be disturbed on appeal.

5. **Death: Sale of Poison by Mistake: Liability: Instruction.** Where an agent, who was sent to purchase a simple remedy, was given by mistake a poison, from the taking of which his principal died, an instruction which states in substance that, unless the agent disclosed to the seller that he was purchasing it for his principal, an action for the death of the principal could not be maintained, was properly refused.

Appeal from the district court for Custer county; Bruno O. Hostetler, Judge. *Affirmed.*

*Sullivan & Squires*, for appellant.

*Silas A. Holcomb* and *W. F. Critchfield*, contra.

Letton, J.

Action for death by wrongful act. Plaintiff recovered a verdict and judgment for $1,500, and defendant appeals. The plaintiff is the administrator of the estate of his deceased wife, Etta L. Moses. He sues for the benefit of himself, and the mother of deceased, as next of kin. The action was originally brought against Dr. Mathews, Mrs. Mathews and Barber. It was voluntarily dismissed as to Mrs. Mathews. The court by a peremptory instruction directed the jury to return a verdict in favor of Barber, on the ground that he was a minor when the transaction occurred.

The petition charges negligence in selling tartar emetic as cream of tartar, and in negligently failing to label the substance sold as poison. The answer denies the authority of Christopherson to sell drugs, and pleads facts as to the

95 Neb. 43

death of the deceased which would go to the mitigation of damages.

The defendant, who is a practicing physician, in September, 1910, was in partnership with one Barber in the drug business in Callaway. Dr. Mathews' time was principally devoted to the practice of his profession, and Barber looked after the drug store. The firm employed one Christopherson, a young man about 18 years of age, as a clerk in the store. He was not a registered pharmacist. On September 17, 1910, Mrs. Moses, with her brother, Samuel Sterner, drove in front of the drug store, and at her request Sterner went into the store and asked Christopherson, who was the only person in the store at the time, for ten cents worth of cream of tartar, which Mrs. Moses used occasionally for stomach trouble. Christopherson by mistake delivered to him tartar emetic, wrapping the same up in an ordinary paper package without a label. Sterner gave the package to Mrs. Moses, who put it in her handbag. That evening, just before retiring, she dissolved a spoonful in water and drank it. Shortly afterwards she was taken violently ill, and after severe suffering died the next day. The medical testimony indicated that the cause of her death was poisoning with tartar emetic.

The first point sought to be made by defendant is that, since the evidence shows that Christopherson was forbidden to sell drugs, his act was outside the scope of his authority, and that therefore his principal is not liable. He admits that there is an exception where the servant commits an injury while acting within the apparent scope of his authority, and that this apparent scope must be determined by the facts in evidence. The evidence shows that at the time the purchase was made Christopherson was in sole charge of the store. There is no proof that Mr. Sterner knew, or had any reason to surmise, that there was any limitation upon his authority. If one enters a store and finds a person apparently in charge, in the absence of notice to the contrary, he has a right to presume that such person is authorized to sell any ordinary article of merchandise kept for the purpose of sale, and to rely upon him

procuring and furnishing the article asked for. It is a matter of common knowledge that there is a class of chemical preparations, such as bicarbonate of soda, chloride of lime, copperas, and cream of tartar, which, while in one sense drugs are in such general use for domestic and other purposes as often to be sold in general stores in the smaller towns, and which require no special skill or knowledge to sell. It may be doubted under the evidence whether the clerk was exceeding his actual, and he was not exceeding his ostensible, authority. Even though the clerk disobeyed his instructions, it is a settled principle that a master is liable for the consequences of the negligent conduct of his servant, committed in the course of his employment, although the particular act complained of was unauthorized by the master, and was done in disobedience to his commands. Wickham v. Walcott, 1 Neb. (Unof.) 160; Weber v. Lockman, 66 Neb. 469; Barrett v. Minneapolis, St. P. & S. S. M. R. Co., 106 Minn. 51, 18 L. R. A. n. s. 416, and collection of cases upon this point found in the note to the latter case.

The next point argued is that there is no proof presented to show that Mrs. Moses' mother depended upon her for support or was injured by her death. This is true; but by the instructions the amount of plaintiff's recovery was limited to compensation to the husband for the loss of his wife's services.

It is next objected that the petition does not state a cause of action in favor of the husband; the position taken being that it is not sufficiently specific as to the wife's capacity to work, the value of her services, and the expectancy of the parties. This objection comes too late after trial and verdict. The general allegations are sufficient. If the defendant desired a more specific statement, he should have moved for it before the trial.

It is next argued that the evidence does not support the verdict in several respects—that there was no proof of the expectancy of the husband; that plaintiff did not prove the value of the wife's counsel, or her labor and assistance, and the probable cost of maintaining her; that there was no

proof of the wife's business capacity, or any other fact upon which the jury could predicate a money damage; and no proof that the substance taken by Mrs. Moses was that purchased from Christopherson.

As to the proof of the husband's expectancy, the law does not require the production of tables of expectancy in order to prove the probable duration of human life. They are permitted to be used as tending to throw some light upon the question, but it would be imputing gross stupidity to a jury if a court should hold that it was incapable of forming a reasonable estimate as to the age of a party to a suit who testifies before them upon the witness-stand, and as to the average duration of human life. Even with the aid of tables of expectancy, such an estimate is largely conjectural but it is acted upon by each of us in daily life.

We are satisfied that the circumstantial evidence that her death resulted from taking the tartar emetic given Sterner is sufficiently strong to convince any reasonable mind.

It is complained that it was error to admit in evidence the Carlisle table as to the expectancy of the deceased, for the reason that she suffered from a serious heart trouble at the time of her death. We will consider this complaint in connection with the assignment that there is no proof of any facts upon which the jury could predicate money damages to the husband. It is shown that Mrs. Moses was nearly 43 years old, and that though she was not in robust health she had been able for several years to assist her husband upon a farm in Oklahoma, and after the family moved to Nebraska to do light housework and to aid in caring for the home in Broken Bow. There was evidence derived from a post mortem examination that the deceased was suffering with valvular heart trouble, and medical testimony that with over exertion by one suffering with such a condition it might terminate fatally at any time, but that with proper care such a person might live for years. There was testimony also that deceased had symptoms indicating the existence of chronic Bright's disease, and that of medical experts, to whom the symptoms were described, that in all

probability she could only live a few months.  The jury were properly instructed that the evidence furnished by the table was not conclusive, but might be received and considered with other evidence in the case, and that "its statement as to expected duration of life might be varied, strengthened, weakened, or entirely destroyed by other competent evidence on the question of the expected continuance of life of the injured party."

The ascertainment of pecuniary damages in suits of this nature is often exceedingly difficult, and depends upon future contingencies, such as attend the existence of human life.  The exact pecuniary loss to plaintiff is impossible of ascertainment.  It is obvious that, if the wife was able to perform the ordinary household duties, the lack of such services would constitute an element of damages.  Mere proof of the value of services of a housemaid or housekeeper might not be sufficient, and in ordinary cases the matter must be left to the good judgment and ordinary common sense of the jurors, considering all the circumstances of each case.  If the testimony of Dr. Mullins and that of the other experts based thereon is true, the verdict is excessive, since one year would be the limit of the probable duration of life of deceased according to their testimony; while, on the other hand, if the testimony of other witnesses as to her condition is believed, she might have lived for years by being careful.  This is the point in the case upon which we have had most hesitation, but we are not prepared to say upon the whole testimony that the verdict was excessive, and to substitute our judgment for that of the jury in this regard.  *Denver & R. G. R. Co. v. Gunning*, 33 Colo. 280, 80 Pac. 727; Tiffany, Death by Wrongful Act. (2d ed.) sec. 163, and cases cited.

The complaint that it was error to dismiss Barber out of the case on the ground of his being a minor is untenable. If the partnership was liable at all Barber and Mathews were joint tortfeasors.

Complaint is made of the refusal to give instruction No. 7 requested by the defendant.  We find no instruction bearing this number in the record.  Probably instruction

No. 1 is meant, which stated substantially that, unless the deceased's brother disclosed to the drug clerk that he was purchasing it for her, or any other person than himself, the deceased could not recover, and therefore that her husband could not recover. This instruction was properly refused. The brother was acting as agent for Mrs. Moses, and both Sterner and she had a right to believe that the article sold was that which was asked for. The fact that the principal was undisclosed does not change the liability.

We find no prejudicial error in the supplemental points presented. Taking the whole record together, the case seems to have been fairly tried, and the judgment of the district court is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.