JAMES D. MABE, ADMINISTRATOR OF THE ESTATE OF ROBERT
MABE, DECEASED, APPELLANT AND CROSS-APPELLEE, V.
ROBERT H. GROSS, APPELLEE AND CROSS-APPELLANT.

94 N. W. 2d 12

Filed January 9, 1959. No. 34470.

*William S. Padley,* for appellant.

*Maupin, Dent, Kay & Satterfield* and *William E. Morrow, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for wrongful death brought by James D. Mabe, administrator of the estate of Robert Mabe, deceased, for the benefit of the next of kin, for pecuniary loss resulting from the death of plaintiff's decedent. The defendant denied negligence on his part and alleged contributory negligence of plaintiff's decedent. The trial court directed a verdict for the plaintiff for funeral expenses only. The plaintiff appeals from the judgment denying a recovery of damages other than funeral expenses to the next of kin. The defendant cross-appeals from the judgment entered against him, asserting that the trial court erred in holding him guilty of negligence as a matter of law and in directing a verdict against him for funeral expenses.

The automobile accident out of which this litigaton arose occurred 1.4 miles east of Brady, Nebraska, on U. S. Highway No. 30. Plaintiff's decedent was driving west at about 9 o'clock p.m., on November 1, 1956, the day of the accident. The pavement was 24 feet wide and the weather was described as misting slightly. The evidence shows that the automobile left the north edge of the pavement about 24 feet east of the point of impact and struck the truck of the defendant about 4 feet north of the pavement. Robert Mabe, the driver of the automobile, was killed in the accident. Marion Mabe, his brother, who was riding in the automobile, was asleep when the accident occurred and he remembered nothing concerning the accident, his evidence being that he was unconscious for 2½ days thereafter. Chuck Willis, a brother-in-law of Robert and Marion Mabe, was a third occupant of the car. He was also killed in the accident.

The evidence shows that the defendant was driving a diesel-powered tractor. He had driven into Brady

when he discovered that he had lost a wheel and tire from one of the dual wheels on his trailer. He left the trailer in Brady and went back toward the west to look for the lost wheel and tire. The accident occurred on his return trip at a point beyond Brady. The evidence shows that he applied his brakes about 250 feet west of the point of impact, as shown by the tire marks on the pavement. These tire marks show that the tractor crossed to the left side of the center line on the pavement about 128 feet west of the point of impact and that it left the pavement about 30 feet west of the point where the collision occurred. The parties stipulated that the funeral expenses for plaintiff's decedent were $660.15. The trial court in effect found that defendant was guilty of negligence as a matter of law and found also that the only damages proved were the funeral expenses in the amount of $660.15, and directed a verdict for plaintiff for that amount. The plaintiff contends that the trial court erred in refusing to submit to the jury the matter of damages based upon the pecuniary loss sustained by Susan Mabe, the 3-year-old daughter of Robert Mabe, and by James D. Mabe and Paula Mabe, the parents of Robert Mabe.

An action for wrongful death in this state exists by virtue of section 30-809, R. R. S. 1943. The damages that may be recovered and the disposition of the avails of any judgment obtained are controlled by section 30-810, R. R. S. 1943. The measure of recovery is fixed by these sections of the statutes. The applicable language is that part of section 30-810, R. R. S. 1943, which provides: "It shall be brought by and in the name of his personal representatives, for the exclusive benefit of the widow or widower and next of kin. The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained. The avails thereof shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered

by each bears to the total pecuniary loss suffered by all such persons."

This case presents the question as to the meaning of the words "next of kin" as they are used in the foregoing statute. We think the meaning of these words is correctly stated in Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170, wherein it is said: "The words 'next of kin' are used as a technical legal phrase in their ordinary technical sense. (Dukeman v. Cleveland, Cincinnati, Chicago & St. Louis Railroad Co. 237 Ill. 104.) The term 'next of kin,' in its technical, legal meaning, means persons nearest in degree of blood surviving. In its practical use the term has come to mean, ordinarily, those persons who take the personal estate of the deceased under the statutes of distribution. The English courts hold that the primary and proper meaning of 'next of kin' is the nearest in proximity of blood living at the death of the person whose next of kin are spoken of. (2 Pope's Legal Definitions, p. 1025.) Under our statute on descent (Smith's Stat. 1925, chap. 39, sec. I, p. 979,) personal property descends first to the deceased's children and their descendants in equal parts, the descendants of the deceased's child or grandchild taking the share of its deceased parents in equal parts. When there is no child of the intestate or descendants of such child, and no widow or surviving husband, then the property descends to the parents, brothers and sisters of the deceased and their descendants, etc. * * * The next of kin of any deceased person are definite blood relatives or a definite class of blood relatives or kinsmen in existence at the time of the death of the deceased who would take his personal property in case he died intestate." See, also, Warren v. Englehart, 13 Neb. 283, 13 N. W. 401; Piechota v. Rapp, 148 Neb. 442, 27 N. W. 2d 682.

Under the statute of descent in this state personal property descends first to the decedent's children and the heirs of deceased children. It is only when there

is no child of the deceased, or descendants of a deceased child, that such property descends to the parents. It is clear, therefore, that the 3-year-old daughter of Robert Mabe is his next of kin under the wrongful death statute, and that the parents of Robert Mabe are not next of kin under the facts here existing.

The trial court held that the evidence was insufficient to show that the 3-year-old daughter suffered pecuniary loss resulting from the wrongful death of her father. The evidence shows that the deceased was 24 years of age and had a life expectancy of 39 years. He was divorced and the child was in the custody of her mother. Immediately prior to his death Robert Mabe was earning from $65 to $75 per week. He was a strong, able-bodied man.

The daughter Susan has a life expectancy in excess of 48 years. The only competent evidence of pecuniary loss resulting from the wrongful death of her father is a stipulation that deceased was paying support money for the benefit of his daughter at the time of his death, no amounts being shown.

The defendant contends that the foregoing evidence is insufficient to submit to the jury the amount of pecuniary loss sustained by the 3-year-old daughter. It cannot be questioned that there is a legal duty of a father to support his minor child. Under such circumstances the averment of relationship is sufficient. City of Friend v. Burleigh, 53 Neb. 674, 74 N. W. 50; Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757. In the last case cited this court stated: "A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another." As early as Johnson v. Missouri Pacific Ry. Co., 18 Neb. 690, 26 N. W. 347, this court stated: "But, it is said that the word 'pecuniary' as used in our statute is not construed in a strict sense. The damages are largely prospective, and their determination committed to the discretion of juries upon

very meagre and uncertain data. A parent may recover for loss of expected services of children not only during minority, but afterwards, on evidence justifying a reasonable expectation of pecuniary benefit therefrom. Neither is it essential that this expectation of pecuniary benefit should be based on a legal or moral obligation on the part of the deceased to confer it, but it may be proved by any circumstances which render it probable that such benefit would, in fact, be realized." See, also, Missouri Pacific Ry. Co. v. Baier, 37 Neb. 235, 55 N. W. 913; Crabtree v. Missouri Pacific Ry. Co., 86 Neb. 33, 124 N. W. 932, 136 Am. S. R. 663; Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831; Wieck v. Blessin, 165 Neb. 282, 85 N. W. 2d 628.

The proof of pecuniary loss in a wrongful death action is discussed in City of Friend v. Burleigh, *supra,* as follows: "The rule deducible from these cases, as well as from the weight of cases elsewhere, is that the petition must show facts from which a pecuniary loss is inferable. In the case of collaterals or others not legally dependent upon the deceased, at least where they are not heirs at law, facts must be pleaded showing an actual pecuniary interest in his life. Where, however, it is pleaded that the next of kin sustain such a relationship to the deceased that the law imposes upon him a duty to support them and that practical ability existed to enable him to perform that duty, a pecuniary interest is pleaded. Its extent is a question for the jury."

In Armstrong v. Union Stockyards Co., 93 Neb. 258, 140 N. W. 158, we said: "There is no certainty, and perhaps not even a probability, that the present earnings of an active young man of that age are the limit of his full capacity. What were the reasonable probabilities of his future earnings, and the future necessities of the beneficiaries? It is always difficult in such cases to determine the exact measure of the pecuniary loss, and this duty devolves upon the jury. They must take into consideration the condition of the parties and all of the

circumstances disclosed by the evidence, and determine what sum will make full compensation for the loss sustained." And in Moses v. Mathews, 95 Neb. 672, 146 N. W. 920, Ann. Cas. 1915A, 698, we said: "Ordinarily, the matter must be left to the good judgment and ordinary common sense of the jurors, considering the circumstances of each case, and, unless a verdict is manifestly unjust and excessive, it will not be disturbed on appeal." And also in Kroeger v. Safranek, *supra,* we said: " 'The law does not provide any positive, definite, mathematical formula or legal rule by which a jury shall fix the pecuniary loss suffered in the death of the head of a family. * * * A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another.' "

In Howlett v. Doglio, 402 Ill. 311, 83 N. E. 2d 708, 6 A. L. R. 2d 790, the court said: "In cases arising under the Wrongful Death Act, if the next of kin are lineal kinsmen of the deceased, a presumption of pecuniary loss obtains from the relationship, alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss." We think the foregoing rule applies in this state where the deceased was under a legal liability to support the next of kin in whose behalf the action was commenced. The jury is required to take a perspective view of existing circumstances to determine the pecuniary loss sustained by those for whom the action may be maintained. The money value of such pecuniary loss cannot ordinarily be determined in dollars and cents. It is peculiarly a jury question to be determined from all the circumstances and evidence available.

On the basis of the foregoing authorities we conclude that the evidence of the essential facts was sufficient to permit a jury to determine the fair and just compensation for the pecuniary loss sustained by Susan Mabe, the next of kin, which resulted from the wrongful death

of Robert Mabe. The trial court erred in not submitting this issue to the jury.

The defendant contends that the trial court erred in finding him guilty of negligence as a matter of law. Upon this question the record shows that defendant observed two cartons of head lettuce in his driving lane by the lights of oncoming cars. The physical facts show and the defendant testifies that he immediately applied his brakes at the point where the tire marks begin. The evidence is conclusive that it was at a point approximately 215 feet west of the two cartons. Defendant testifies that the lights of the oncoming cars caused the cartons to cast shadows, giving the appearance that the right-hand side of the highway was obstructed. He applied his brakes for a distance of 125 feet. He then determined to turn left across the highway. He states that he decided against turning off the pavement to his right for fear of striking the guardrail posts on the south side of the highway. He states that he released his brakes and accelerated the tractor at the point where he crossed the center line of the highway with the intention of avoiding an accident by driving off of the left side of the highway. The evidence conclusively shows that he traveled 98 feet to the point where he left the north edge of the pavement and an additional 30 feet to the point of impact. The defendant asserts that he was faced with such an emergency that his negligence, if any, is excused.

We point out that according to the defendant's testimony, the two cartons were beyond the range of his driving lights and that he saw the two cartons of lettuce solely by the lights of oncoming cars. We think this evidence establishes that defendant was guilty of negligence as a matter of law. It is a general rule that a driver of a motor vehicle who drives at such a speed that he cannot stop within the range of his vision is guilty of negligence as a matter of law. No exception to this rule applies here for the defendant saw the ob-

struction beyond the range of his lights. The defendant, to avoid a charge of negligence, should have stopped his car within the range of his lights which distance was, according to his own testimony, a lesser distance than the point of the alleged obstruction in his driving lane. Admittedly he saw the obstruction beyond the range of his normal vision. He should have been able to stop within his range of vision and if he had done so there would have been no accident. His election to turn across the center line at a point 128 feet west of the point of impact, after braking his tractor for a distance of 125 feet, was the act creating the alleged emergency. The two cartons in his driving lane did not create the emergency that resulted in the collision. Consequently, the emergency was of his own making after a failure to stop his tractor within the range of his lights. The trial court took this view of the evidence and we think it was the correct one.

The defendant also complains of the action of the trial court in directing a verdict for the plaintiff on the question of the negligence of Robert Mabe. There is no evidence in the record of any negligence on his part. The collision was caused solely by the negligence of defendant in encroaching upon the driving lane of the Mabe automobile.

The only reversible error found in the record is the refusal of the trial court to submit to the jury the issue as to the amount of damages for the pecuniary loss sustained by Susan Mabe resulting from the wrongful death of her father, Robert Mabe. The judgment is reversed and the cause remanded for a new trial in accordance with the holdings of this opinion.

REVERSED AND REMANDED.