JULIA WANDERHOLM, ADMINISTRATRIX, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED SEPTEMBER 26, 1914. No. 17,769.

1. **Railroads:** TRESPASSERS: IMPLIED INVITATION. If a railroad company fences its right of way through a small town, and posts a conspicuous notice that the grounds so fenced are private, and that it is dangerous to walk thereon and warning trespassers to keep out, the fact that employees of the company know that certain persons are in the habit of going through the fence and walking along such right of way in going to and from their business, and that such employees of the company have never personally forbidden such custom, will not constitute an invitation to so use the right of way and the railroad tracks thereon.

2. ———: ———: NEGLIGENCE. Under such circumstances the transaction of the business of the company in the ordinary way, or the running of a passenger train on substantially its schedule time along such right of way, or running such train from 9 to 12 minutes behind its regular time, or upon one of the two tracks upon such right of way generally used by trains running in the opposite direction, will not constitute negligence on the part of the company.

3. ———: ———: ASSUMPTION OF RISK. In such case a person going through such fence and walking along the right of way assumes the risk of accident and undertakes to avoid the danger he might incur from the ordinary transaction of the company's business.

4. ———: ———: NEGLIGENCE: LAST CLEAR CHANCE. If the defendant's engine struck the plaintiff's decedent and caused his death, and the engineer was so situated that he could not see the track before his train, so that it became the duty of the fireman, when not otherwise engaged, to keep a lookout for objects on the track, it being a stormy day with snow flurries in the air, and the engine emitting clouds of steam and smoke, and there being no evidence as to when

or where the deceased went upon the track, the fact that the fireman did not see the deceased before he was struck by the engine is not proof that he was neglecting his duty at the time, or that the defendant was guilty of negligence which was the proximate cause of the accident.

5. **Trial:** INSTRUCTIONS. The trial court correctly instructed the jury that there was no evidence that the defendant failed to sound the whistle or ring the bell, and that ''the railroad company had the right to operate its westbound trains on its eastbound track, and also its eastbound trains on its westbound track, if it saw fit to do so.''

APPEAL from the district court for Cass county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*Byron Clark* and *Rawls & Robertson,* for appellant.

*Matthew Gering, contra.*

SEDGWICK, J.

The plaintiff is the widow of Oscar Wanderholm, and as administratrix of his estate brought this action in the district court for Cass county to recover damages for the death of her husband, caused, as she alleges, by the carelessness of the defendant railroad company and the defendant Sadle, who was the fireman upon the engine which, it is alleged, struck and killed Mr. Wanderholm. Upon trial in the district court the plaintiff recovered a verdict and judgment, and the defendant has appealed.

The defendant contends that under the evidence the plaintiff was not entitled to recover, and complains of some of the rulings of the court in the progress of the trial, and of some of the instructions given by the court and refusal to give certain instructions asked by defendant, and also that the verdict is contrary to the instructions given.

The principal question in the case is whether the evidence is sufficient to justify a recovery in favor of the plaintiff. The defendant contends that "deceased was a trespasser, or at most a bare licensee, to whom the company owed no duty except not to wantonly or wilfully injure him," and that the deceased was himself so negligent as to preclude a recovery.

The defendant's right of way extends north from the depot to the pumping station of the water company—nearly one mile. This right of way is fenced on both sides by the company, and a sign is posted in a conspicuous place notifying the public that the grounds are private and warning against trespassing thereon. Mr. Wanderholm had been in the employ of the water company as engineer at its pumping station for 8 or 9 months. He lived a few rods distant from the right of way, about half way from the depot to the pumping station. On the morning of January 1, 1911, the deceased left home "a good deal later" than he usually did. It was about 8 o'clock when he left home. He usually went between 6 and 7. Passenger train No. 15 arrived at the defendant's depot at 8:25. Its schedule time was 8:16. It was therefore 9 minutes late in arriving at the depot. It remained there 3 minutes and left the depot 12 minutes after the time it should have arrived. The body of the deceased was first discovered on the right of way a little before 9 o'clock. It is practically conceded that the deceased was struck and killed by train No. 15.

The plaintiff contends that the deceased was upon the tracks by invitation of the defendant. There is not much dispute in the evidence upon this point. The right of way of the railroad company was fenced the whole distance from the depot to the pumping station, and a large sign was placed in a prominent position notifying the public that the ground so fenced was private and that it was dangerous to trespass thereon. There had generally been for the past 15 years two or three employees of the water company, and they had been in the habit frequently of passing from their homes to the pumping station along these tracks. This was known by the yard-master and the section foreman of the railway company, and they had never notified the deceased that he must not so use these tracks. The statement in the brief that the manner in which the employees of the water company were to use the tracks was stated to them by the station agent is not sustained by the evidence. This certainly did not amount to

an invitation to the deceased and to the employees of the water company to travel on these tracks. It may have been more convenient for them to do so than to take some other route, but the evidence shows that they were not compelled to go upon this right of way for the distance of a mile or a half mile, as the deceased in this case did. There was a street along the right of way which they might have used. There is in this respect no parallel between this case and the case of *Armstrong v. Union Stock Yards Co.*, 93 Neb. 258. In that case the Cudahy Company maintained an inclosure in the yards of the defendant company which was used in connection with their shipping over the tracks of the defendant company, and was maintained and so used for the benefit of both companies with the knowledge and consent of the defendant company. In the case at bar there was no relation between the railroad company and the water company, and this inclosed right of way was for the exclusive use of the railroad company in its ordinary business. The water company and its employees had no more privilege or right on this right of way than the general public had.

It is also stated in the plaintiff's brief: "On the day of the accident the train which struck the deceased was 12 minutes late; it was run on the eastbound track, when it was usually run on the westbound track; its speed was scheduled at 28 miles an hour in ordinary weather; while in stormy weather under the rules of the company trainmen were enjoined, 'if delayed on any part of the road, not to attempt to make up time, but to take extraordinary precaution both at switches and at all places where the right to proceed depends upon signals.'" It was also argued that the fireman of the engine was negligent in not seeing the deceased and notifying the engineer, and so preventing the accident. The evidence is that train No. 15 was a few minutes late in leaving the Plattsmouth station, as before stated, and was running at a speed of from 25 to 35 miles an hour between that station and Oreapolis, and the engineer testified that at a curve in the track the

train was running at about 35 miles an hour. The distance from Plattsmouth to Oreapolis is 4 miles, and the schedule time of the train was 7 minutes, which would be something more than 34 miles an hour, which is not very much different from the fastest rate testified to—35 miles an hour. Cases are cited holding that 35 miles an hour "within railroad yards and city limits" is a dangerous and unreasonable rate of speed, but the argument derived from these cases in the case at bar is hardly fair. These cases have no application to the right of way between two small stations, when that right of way is fenced and a public warning given against trespassing thereon.

The argument which seeks to apply the so-called rule of the last clear chance is likewise unsatisfactory. The argument assumes that the deceased was upon the track in such a position and in such a distance from the approaching train, and that the conditions were such that the fireman, if he was keeping a proper lookout, must necessarily have seen him. It was a very cold and stormy day. It would be at least as probable that the deceased would walk between the tracks as that he would walk between the rails of either track, and there is no evidence that he was not walking between the tracks and suddenly stepped between the rails of the track upon which the train was approaching. Some of the witnesses testify that the train when going from the station was throwing large quantities of steam and smoke which would obstruct the view. There is no evidence to the contrary. The fact that the fireman did not see deceased under such circumstances is not proof that he was neglecting his duty at the time. The evidence was that one of these two tracks was ordinarily used by trains going north and the other by trains going south, and that on this occasion train No. 15 going north was upon the track ordinarily used by trains going the other direction. This is alleged as negligence on the part of the defendant company.

The trial court instructed the jury that there was no evidence that the defendant failed to "blow the whistle"

and ring the bell, and that "the plaintiff cannot recover on account of alleged failure" in that regard, and also that "the plaintiff cannot recover in this case solely because of the fact that the train in question was running on the eastbound track at the time of the accident in question, or because of any failure on the part of the defendant to notify the said Wanderholm that said train would run on said eastbound track on the day of said accident. The railroad company had the right to operate its westbound trains on its eastbound track, and also its eastbound trains on its westbound track, if it saw fit to do so." These instructions were justified by the evidence and properly eliminated those questions from the case.

When the deceased went through the company's fence and walked upon the right of way, he assumed the risk of accident, and undertook to avoid the danger he might incur from the ordinary transaction of the company's business. If the fact that the local employees of the company knew that deceased was in the habit of walking upon the right of way and made no objection to his so doing amounts to notice to the company and its consent to such use of its right of way, it could not amount to more than a license to so use it at his own risk, and could not be construed as an agreement on the part of the company to guarantee his safety, or to suspend or limit the ordinary use of its tracks so as to render them more safe for such use by deceased.

There is no evidence that the accident was caused by any negligence on the part of defendant. The judgment is therefore reversed and the cause remanded.

REVERSED.

REESE, C. J., and FAWCETT, J., not sitting.