J. T. MILLMAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF
CHRISTOPHER T. DUNCAN, DECEASED, APPELLANT AND
CROSS-APPELLEE, V. COUNTY OF BUTLER, NEBRASKA, APPELLEE
AND CROSS-APPELLANT.
504 N.W.2d 820

Filed September 3, 1993.  No. S-91-341.

Rollin R. Bailey, of Bailey, Polsky, Cope, Wood & Knapp, for appellant.

Peter C. Bataillon and Edward F. Noethe, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This is an action for wrongful death brought under the Political Subdivisions Tort Claims Act against the defendant, County of Butler, Nebraska, by the plaintiff, J.T. Millman, personal representative of the estate of Christopher T. Duncan, deceased. In a prior appeal, we held that the action had been commenced within the time prescribed in Neb. Rev. Stat. § 13-919 (Reissue 1991) and remanded the cause for trial upon the merits. See *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990).

The record shows that on April 21, 1984, the deceased, Christopher T. Duncan, was a passenger in a truck traveling on a muddy county road near Brainard, Butler County, Nebraska. As the driver of the truck attempted to cross over a bridge, the truck slid to the left through the left railing of the bridge and then toppled over into the creek below, which was swollen because of rain that had occurred in the early part of that day. The truck's speed at the time the truck approached the bridge was approximately 10 miles per hour.

The truck landed upside down in the creek facing into the stream and began to sink as it was carried downstream. All of the passengers in the truck were able to get out of the truck through the driver's door except the deceased.

The body of the deceased became wedged in or caught in the cab of the truck, with only the upper portion of his body above the water. Although the driver of the truck attempted to pull the deceased from the vehicle, he was unable to do so, and the deceased was unable to extricate himself from the truck as it settled into the water. After a few minutes, the deceased was pulled under the water and drowned.

At the time of his death, Duncan was 17 years 11 months of age. He was a high school dropout during the 10th grade and was employed as a general laborer at minimum wage with the natural resources district in York, Nebraska.

The deceased was the biological father of Cassandra Beth Carranza, who was born out of wedlock to Leslie Mogul on

December 3, 1982. Paternity had not been adjudicated at the time of Duncan's death. At the time of his death, Duncan had provided no support for his daughter except for occasional diapers and clothes; however, he did spend considerable time with her and her mother. The deceased and Mogul were planning to be married after Mogul graduated from high school.

The trial court found that the defendant was negligent in the construction and maintenance of the road and bridge by failing to provide adequate railings on the bridge to contain the occasional or intermittent use by a passenger vehicle and by failing to post signs along the roadway on the approach to the bridge, warning of the dangers of the road and bridge. The trial court also found that the defendant's negligence was a concurrent proximate cause of the accident and the resulting death of the deceased.

The trial court found that Carranza is the next of kin of the deceased pursuant to Neb. Rev. Stat. §§ 30-2209, 30-2303(1), and 30-2309(2)(ii) (Reissue 1989); however, since the deceased was under no legal obligation to support his daughter born out of wedlock, the trial court refused to award the decedent's daughter damages for a loss of financial support.

The trial court found that the deceased experienced conscious pain and suffering prior to his death and awarded the plaintiff $15,000 in damages. This was in addition to $15,000 which the plaintiff had received from the owner and the driver of the truck in complete settlement of all claims against the driver and the owner of the truck for Duncan's death. The plaintiff testified that it was his intention that "the settlement was strictly with the insurance company."

The plaintiff has appealed and assigned as error the trial court's failure to award damages for the deceased's minor child and an adequate amount for the deceased's pain and suffering prior to his death. The defendant has cross-appealed and assigned as error that the trial court erred in not ruling that the plaintiff's claim was barred by the statute of repose as provided in Neb. Rev. Stat. § 25-223 (Reissue 1989), in not ruling that the release given by the plaintiff released the defendant, in not ruling that the defendant had complied with the applicable

maintenance standards, and in not ruling that the plaintiff failed to prove proximate cause. We consider the defendant's arguments on cross-appeal first.

The defendant contends that the plaintiff's claim for damages based upon construction of the bridge or road in question is barred by § 25-223, which provides a 10-year period of repose for "any action . . . to recover damages for an alleged breach of warranty on improvements to real property or deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property . . . ." The defendant argues that since the bridge was built in 1964, the plaintiff's cause of action is barred by the statute of repose because this cause of action was not brought until December 30, 1985.

In the prior appeal of this case, we stated that the statute of limitations for filing a claim under the Political Subdivisions Tort Claims Act is exclusively prescribed by § 13-919. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990).

Section 13-919 provides:

(1) Every claim against a political subdivision permitted under the Political Subdivisions Tort Claims Act shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by the act shall be forever barred unless begun within two years after such claim accrued. . . .

. . . .

(5) This section and section 25-213 shall be the only statutes of limitations applicable to tort claims as defined in the act.

The language of this section was substantially the same at the time this action was filed.

The negligence of the defendant, if any, was of a continuing nature and continued until the date of the accident which resulted in the death of the deceased. See *Schmutte v. State*, 147 Neb. 193, 22 N.W.2d 691 (1946). Thus, the action was not barred by § 25-223.

Next, the defendant contends the release given by the plaintiff to the owner and the driver of the truck released the

defendant as well. The release stated in part:

KNOW ALL MEN BY THESE PRESENTS that the undersigned J.T. Millman, duly appointed, qualified and acting legal Personal Representative of the Estate of Christopher T. Duncan, deceased, in consideration of the sum of $15,000.00 to him paid as such Personal Representative, receipt whereof is hereby acknowledged, hereby releases and forever discharges Francis J. Neville, Jospeh [sic] R. Meier and Economy Fire and Casualty Company, their insurer, their heirs, executors, administrators, Personal Representatives, successors and assigns, of and from all claims, demands, damages, and causes of action which the said J.T. Millman as Personal Representative of the Estate of Christopher T. Duncan, has or may have against the said Francis J. Neville, Joseph R. Meier and Economy Fire and Casualty Company, their insurer, in respect of the wrongful death of the said Christopher T. Duncan or arising or to arise from or by reason of a certain accident or wrongful death of the said Christopher T. Duncan, on or about the 21st day of April, 1984, as a result of an automobile accident which occurred in Butler County, Nebraska, on a county road when the said Joseph R. Meier ran into a bridge railing, while said deceased was a passenger in a 1973 Dodge Pickup Truck driven by the said Joseph R. Meier.

The defendant claims that the release applies to all damages sustained as a result of the wrongful death of the decedent. The defendant relies on *Fitzgerald v. Union Stock Yards Co.*, 89 Neb. 393, 131 N.W. 612 (1911).

The *Fitzgerald* case does not stand for the proposition that a release of part of a cause of action releases the whole. *Crnkovich v. Scaletta*, 203 Neb. 22, 277 N.W.2d 416 (1979).

*Fitzgerald* stands for the following propositions:

"If one of several joint wrongdoers makes *full payment of damages* caused by injury done, there can be no further recovery for the same injury.

"If one of several joint wrongdoers makes settlement with the injured party and pays him damages which he agrees to receive and does receive as *full compensation* for

all damages sustained, it will release all of the joint wrongdoers.

"Settlement with one of several joint wrongdoers and payment of damages is not a defense to an action against another, unless it was agreed between the parties to the settlement that such payment was *in full of all damages* suffered."

(Emphasis supplied.) *Crnkovich*, 203 Neb. at 25, 277 N.W.2d at 418.

In this case, there is no language in the release that the consideration paid was received as full compensation for all damages sustained by the plaintiff. Furthermore, the release clearly releases only Neville, Meier, and their insurer for all claims the plaintiff had against Neville, Meier, and their insurer for the wrongful death of the decedent. "[A] release which is confined to certain claims or demands arising from a particular matter operates to release the particular claim or demand specified but does not necessarily release other claims or demands arising from the same matter . . . ." *Crnkovich*, 203 Neb. at 25-26, 277 N.W.2d at 419.

The plaintiff's release of Neville, Meier, and their insurer does not bar the plaintiff's claim against the defendant.

Next, the defendant argues that the trial court erred in finding the defendant was negligent in the construction and maintenance of the bridge. In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and

when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in its favor, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence.

*Steinauer v. Sarpy County*, 217 Neb. 830, 835, 353 N.W.2d 715, 720 (1984).

Neb. Rev. Stat. § 13-912 (Reissue 1991) provides that the procedure for filing claims for damages caused by insufficiency or want of repair of a highway or bridge or other public

thoroughfare is the same as for other claims filed pursuant to the Political Subdivisions Tort Claims Act. Neb. Rev. Stat. § 13-913 (Reissue 1991) provides in part:

In enacting section 13-912, it is the intent of the Legislature that the liability of all political subdivisions based on the alleged insufficiency or want of repair of any highway or bridge or other public thoroughfare shall be the same liability that previously has been imposed upon counties pursuant to section 13-912. The Legislature further declares that judicial interpretations of section 13-912 governing the liability of counties on January 1, 1970, also shall be controlling on the liability of all political subdivisions for the alleged insufficiency or want of repair of any highway or bridge or other public thoroughfare. Notwithstanding other provisions of [the act], sections 13-911 to 13-914 shall be the only sections governing determination of liability of political subdivisions for the alleged insufficiency or want of repair of highways, or bridges or other public thoroughfares.

In interpreting the above provisions, this court has stated that the duty of care imposed by the Political Subdivisions Tort Claims Act is "to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them while he is in the exercise of reasonable and ordinary caution and prudence." *Hendrickson v. City of Kearney*, 210 Neb. 8, 11-12, 312 N.W.2d 677, 679 (1981).

In *Hansmann v. County of Gosper*, 207 Neb. 659, 661, 300 N.W.2d 807, 808 (1981), this court stated that under § 13-912,

a county is liable for damages caused by insufficiency or want of repair of a county bridge. We have held that a county is required to maintain bridges that are sufficient for the proper accommodation of the public at large in the various occupations which from time to time may be pursued in the locality where the bridge is situated. . . . A person using a bridge has a right to assume that the bridge is sufficient in the absence of knowledge that it is unsafe.

(Citations omitted.)

In the instant case the trial court found that the defendant

was negligent in the construction and maintenance of the road and bridge in question by failing to provide adequate railings on the bridge to contain the occasional or intermittent use by a passenger vehicle and by failing to post signs along the roadway on the approach to the bridge warning of the dangers of the road and bridge.

Although the evidence in this case was somewhat in conflict, there is sufficient evidence to sustain the finding of the trial court that the defendant was negligent in the construction and maintenance of the bridge. The inadequacy of the bridge's railing to contain the truck as it slid into the railing was not the only basis for a finding of negligence. The evidence shows that the defendant had notice of other problems concerning the bridge, as reflected by the inspection reports of 1979, 1982, and 1983.

The record shows that the approach to the bridge is a slight curve. Although a part of the road was surfaced with gravel, the approach to the bridge was dirt. The road was 19 feet wide, but the bridge was only 16 feet wide.

The bridge was built in 1964 and is 38 feet long. The railing appears to be constructed of angle iron and consists of a single horizontal rail with vertical posts at both ends and only two center posts. The railing was described by Richard Ronker, Butler County surveyor, as handrails.

At the time the bridge was built, there were no statutory standards regarding the design, construction, or maintenance of roads and bridges in Nebraska. However, the American Association of State Highway Officials (AASHO) published standards for, among other things, the design and construction of bridge structures.

Dr. Edward Post, who testified as an expert witness for the plaintiff, testified that at the time of the construction of the bridge, the AASHO bridge book was the "bible" in the industry and was used throughout the United States for the design of bridges such as the one involved in this case. According to Dr. Post, the AASHO standards were the only ones used by engineers in 1964.

The AASHO standards were adopted by the Nebraska Legislature in 1970. It was the intention of the Legislature that

county road systems be brought to adequate standards over a 20-year period. Neb. Rev. Stat. § 39-2101 (Reissue 1988).

Although Neb. Rev. Stat. § 13-914 (Reissue 1991) provides an exception for "minimum maintenance" roads, the road with the bridge on which the accident happened was designated as a county road at the time of the accident and was not reclassified as a minimum maintenance road until sometime later.

According to Ronker, counties set up a priority of needs to update bridges and roads to meet current standards of design so that they will be reasonably safe for travel. In 1983, the bridge in question was ranked 124th in priority for repairs on a list of 128 bridges.

Dr. Post testified that the bridge railing was deficient in height and geometry in that the spacing of the vertical posts was inadequate. According to Dr. Post, the bridge never had the structural strength to carry the loads that were prescribed by the AASHO standards. Dr. Post further testified that if the railing had been designed in accordance with the AASHO standards, it would have contained and safely restricted a vehicle at an impact speed of 44 to 48 miles per hour.

Dr. Post also testified that the angle of the road in relation to the bridge was also deficient to accommodate vehicles traveling the curve at relatively low speeds. Furthermore, the width of the bridge did not conform to AASHO standards. The bridge is 16 feet wide, while the minimum width required by AASHO standards was 18 feet.

John J. Miriovski inspected the bridge in 1979 and submitted his report to the defendant. The report lists among the bridge's deficiencies dirt on the deck, poor sign distance beyond the bridge in both directions, and roadway width. The ratings accompanying the comments were a "4" for "approaches" and a "2" describing the east railing that was down. The ratings were explained in the report, with 4 meaning "minimum adequacy to tolerate present traffic - immediate rehabilitation necessary to keep open" and 2 meaning "inadequacy to tolerate any live load - warrants closing of bridge to all traffic."

The railing was replaced with a similar one in 1979, and the bridge was again inspected in 1982 by Dennis Jeppson. The 1982 report which was filed with the defendant criticized the

"Approach Roadway Alignment" and listed the rating as 4. The roadway width was also criticized and rated as 2.

The same comments were made on the December 29, 1983, inspection; however, the rating of the approach roadway alignment was lowered to 3.

Although the defendant was aware of the bridge's deficiencies as stated in the inspection reports, the defendant failed to post signs warning of the bridge's danger, and the defendant failed to close the bridge to all traffic until the problems were corrected as recommended by the report.

Finally, the defendant contends that even if the defendant did not comply with the applicable standards concerning construction and maintenance of the bridge, the trial court erred in finding that its negligence was a proximate cause of the accident. The defendant claims the proximate cause of the accident was the speed and loss of control of the truck.

The defendant's argument is without merit. The evidence shows that the speed of the truck as it approached the bridge was approximately 10 miles per hour. If the bridge rail had been constructed according to AASHO standards, it would have been able to contain the truck at that speed, the accident would not have happened, and the decedent would not have drowned.

We conclude that as to the defendant's cross-appeal, the judgment of the trial court should be affirmed in all respects.

As to the plaintiff's assignments of error, the plaintiff asserts that the trial court erred in awarding an inadequate amount for the decedent's pain and suffering prior to his death.

The trial court found the decedent was unable to extricate himself from the pickup truck and drowned after a "few minutes." The trial court awarded the plaintiff $15,000 for the defendant's conscious pain and suffering prior to his death. On the basis of the record in this case, we cannot say that the trial court's findings and award are clearly wrong.

Last, the plaintiff argues that the trial court erred in failing to award damages for the decedent's daughter.

The trial court found that the decedent's daughter is his next of kin pursuant to §§ 30-2209, 30-2303(1), and 30-2309(2)(ii); however, the trial court refused to award damages for the decedent's daughter because the decedent's paternity had not

been adjudicated, and he had not been ordered to pay child support.

A wrongful death action is brought by the decedent's personal representative for the "exclusive benefit of the widow or widower and next of kin." Neb. Rev. Stat. § 30-810 (Reissue 1989).

In *Mabe v. Gross*, 167 Neb. 593, 597-99, 94 N.W.2d 12, 16-17 (1959), this court stated:

> It cannot be questioned that there is a legal duty of a father to support his minor child. . . . "A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another." . . .
>
> . . . "Where . . . it is pleaded that the next of kin sustain such a relationship to the deceased that the law imposes upon him a duty to support them and that practical ability existed to enable him to perform that duty, a pecuniary interest is pleaded. Its extent is a question for the jury."
>
> . . . .
>
> . . . "In cases arising under the Wrongful Death Act, if the next of kin are lineal kinsmen of the deceased, a presumption of pecuniary loss obtains from the relationship, alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss."

In this case, the trial court found that the decedent's daughter is his next of kin. Accordingly, the law imposed upon the decedent a duty to support his daughter, and the trial court erred in failing to award damages for the decedent's daughter.

On remand, the trial court is required to take a perspective view of existing circumstances to determine the pecuniary loss sustained by the decedent's daughter, and "[t]he money value of such pecuniary loss cannot ordinarily be determined in dollars and cents. It is peculiarly a [factual] question to be determined from all the circumstances and evidence available." *Mabe v. Gross*, 167 Neb. at 599, 94 N.W.2d at 17.

The judgment of the trial court is affirmed as to the award of $15,000 for the decedent's pain and suffering. The judgment concerning an award for the decedent's daughter is reversed and

the cause remanded for a new trial only as to the amount to be awarded for the decedent's daughter's loss.

AFFIRMED IN PART, AND IN PART REVERSED.