CRYSTAL D. CHILDERS, APPELLANT AND CROSS-APPELLEE, V.
PHELPS COUNTY, NEBRASKA, A POLITICAL SUBDIVISION AND
NONPROFIT CORPORATION, APPELLEE AND CROSS-APPELLANT.
568 N.W.2d 463

Filed August 8, 1997.   No. S-95-1084.

Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., and Jeffrey M. Cox, of Person, Dier, Person, Osborn & Cox, P.C., for appellant.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

PER CURIAM.

In this case arising under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1992), the plaintiff-appellant, Crystal D. Childers, seeks damages for the alleged negligent failure of the defendant-appellee, Phelps County, to have properly posted and maintained traffic signs on one of its roads. The district court sustained the county's motion for dismissal made at the close of Childers' evidence. Childers appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in (1) excluding certain testimony and (2) sustaining the county's motion. The county cross-appealed, asserting that the district court erred in admitting certain evidence. Under our authority to regulate the caseloads of the Court of Appeals and this court, we, on our own motion, removed the matter to our docket. We reverse, and remand for further proceedings.

## I. FACTS

On June 23, 1993, Childers and Shari Unger decided to drive from the latter's house in Loomis to a truckstop in Overton to eat breakfast. The two left somewhere between 10:30 p.m. and midnight, with Unger driving on the so-called Loomis Blacktop Road, on which the speed limit is 55 miles per hour. The road contains a sharp curve and is marked by solid yellow lines in the center and white lines on both sides, which are clearly visible at night. Although Unger had ridden as a passenger on the

Blacktop Road on several occasions, she had never driven it at night.

A gravel road, the so-called River Road, intersects the Blacktop Road at the curve. A yellow diamond-shaped warning sign with the word "SLOW" printed in black is located approximately 950 feet from the curve. Additionally, a yellow diamond-shaped warning sign with a graphic of a black arrow bent at a right angle is located 435 feet from the curve. This sign can be seen from 1,000 feet and read from at least 500 feet and is clearly visible at night. Thus, if a driver were traveling at 60 miles per hour toward the sign, the sign would be readable for approximately 6 seconds.

On the night in question, rain was falling so hard and causing such poor visibility that at one point Unger stopped to discuss whether to return home. Nonetheless, Unger had no trouble negotiating the curve on the way to Overton; she proceeded cautiously enough that she could see the surface and the lines on the Blacktop Road.

The two girls left Overton between midnight and 2 a.m. Although it was still dark, the rain had stopped. According to Unger, she was driving approximately 55 miles per hour, her headlights were working, and she could see adequately. Notwithstanding that she and Childers were listening to the radio, talking, and would occasionally turn toward each other, Unger testified that she was awake and paying attention.

Unger does not recall seeing the "SLOW" warning sign. As they neared the curve, Childers warned Unger, "[D]on't forget the curve." Unger testified that she did not see any sign prior to the curve until Childers said, "curve sign." Traveling at 55 miles per hour when she passed the turn sign, Unger slowed to about 45 or 50 miles per hour at the curve. She testified that she knew the curve was coming up, but did not know exactly where it was. After Unger caught "a quick glance" of the curve depicted on the turn sign, her "reaction was to take [her] foot off the gas and brake." However, she did not brake hard enough and "came to a point where there was either the curve or the gravel road that went straight ahead." She was confused and did not know whether to take the River Road or to attempt the curve, and ended up going between the two. In her own words, she was

"just going too fast to not make the curve and just the two roads just really screwed me up. I didn't really know which way to go." The automobile then traveled from the edge of the Blacktop Road approximately 50 to 55 feet into a guy wire, climbed the wire, and flipped over. Childers sustained serious injuries.

Unger does not recall whether she applied the brakes prior to going off the road and at a later point testified that she does not remember applying her brakes at all. She testified that had she known she was approaching the sharp curve, she would have reduced her speed gradually to a speed that would have allowed her to negotiate it.

In the spring of 1994, the county placed chevrons at the curve. On the evening prior to her later trial testimony, Unger drove through the curve again. The district court did not allow her to testify as to whether she could have seen the location of the curve sufficiently to negotiate it. However, Unger did testify that she again drove at 55 miles per hour, that she exercised the same degree of attention, and that the presence of the chevrons made it "more possible" to determine where the curve was.

Neither did the district court allow Unger to testify as to whether she would have been able to safely negotiate the curve had it appeared as depicted in certain computer-altered photographs purporting to depict how the curve would appear at night if marked with chevrons or reflectors. Childers made an offer of proof that Unger would have been able to successfully negotiate the curve had it been marked as depicted in the altered photographs.

The county's sign superintendent, Dick Stadler, is responsible for the road signs, markers, delineators, and the like in the county. As part of his responsibilities, he drives around the county and ensures that signage is in place and accurate. Stadler also has the responsibility of fixing or replacing broken or missing delineators (reflectors mounted on posts) and checks all roads once or twice a month. If he notices that a sign needs either replacing or repair, he prepares a written sign report. Stadler testified that not all of the posts had reflector strips on June 24, 1993.

A photograph of the curve taken in July 1993 shows multiple delineators either missing or broken. Likewise, a photograph

taken in February 1994 shows delineators missing or broken. Stadler did not replace the delineators in a timely manner because the county ran out of them. Eventually, he contacted the state highway department for help. In the spring of 1994, Stadler replaced the delineators with chevrons.

Dr. Ronald J. Hensen, a civil engineer with a background in traffic safety and engineering and a consultant on projects dealing with traffic safety, signaling, and signage programs, visited the accident site on June 29, 1994. Among other things, he observed where the delineators had originally been placed.

According to Hensen, the accident scene is clearly hazardous. The curve has a very short radius and should have a recommended speed of 25 to 30 miles per hour. Hensen explained that historically, motorists often fail to successfully negotiate sharp curves that follow long straight stretches of road and that such situations require more than advance warning signs. He testified that the fact that people often fail to successfully negotiate the curve in question, as other witnesses testified, is the most significant factor in determining that the curve is dangerous. Hensen also testified that the "SLOW" sign provides no guidance to the driver, is inappropriate, and should not be used.

The Nebraska Department of Roads has adopted a Manual on Uniform Traffic Control Devices, which, according to Hensen, reflects the standard of care within the State of Nebraska with regard to proper warnings to a motorist of a hazardous curve. According to the manual, "[t]he determination of the sign or signs to be erected shall be on the basis of an engineering study using the following sections as guidelines." The manual recommends that jurisdictions without qualified engineers on their staffs seek assistance from the state highway department, their county, a nearby large city, or a traffic consultant. Hensen testified that the Nebraska highway department is available as a resource to assist the county in traffic safety.

Hensen is of the view that the county failed to act reasonably and prudently with regard to warning motorists of the hazardous corner in question. According to Hensen, the corner requires three things: the advance warning turn sign, a speed plate under the advance warning turn sign indicating what is the safe speed for driving the curve, and chevrons on the back side of the curve

to show the location of the curve. In Hensen's opinion, the county failed to meet this standard of care, and the proximate cause of the accident was the county's failure to have in place adequate signage to assure that a driver would not be confused by the location of the curve.

Hensen explained that delineators are used to indicate the edge of a road, while chevrons are used to indicate a sharp change in alignment. Hensen is of the view that at the time of the accident, the curve had only three delineators visible to the eastbound nighttime traffic. According to him, the delineators did not effectively mark the corner and did not indicate the change in direction, mainly because there were delineators on both sides of the road. In Hensen's opinion, the delineators were misleading. According to him, for delineators to be effective, the reflectors must be within 45 degrees of the headlights and on every post. Further, according to Hensen, once a county installs a traffic control device, it has a responsibility to keep it in place.

In sustaining the county's motion, the district court stated:

> Well, I am not so sure it is a question of the absence of proof for proximate cause is concerned. I kicked this around in my head last night quite a while because I anticipated your argument this morning, at least in part. And every once in a while the Court has to do something it doesn't like to do. I don't — I certainly don't like to do this but I am going to grant the motion to dismiss. I believe the proximate cause of this accident was the driver. Regardless of how long I take it under advisement or how much I ponder it, why, that is a factual finding that I just can't seem to get around. So motion to dismiss will be granted.

The district court also made a number of factual findings in support of its conclusions that Unger drove at an unsafe speed and had failed to keep a proper lookout and proper control of her automobile.

## II. COUNTY'S CROSS-APPEAL

Since the county's cross-appeal involves an issue which affects our consideration of Childers' appeal, we first direct our attention to the county's claim that the district court erred by

receiving into evidence Hensen's opinion that the inadequate signage was the proximate cause of the accident.

## 1. Scope of Review

Our review of this claim is controlled by the rule that the admission of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. *State v. Thieszen, ante* p. 208, 560 N.W.2d 800 (1997); Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995).

## 2. Application of Law to Facts

In determining whether an expert's testimony is admissible, a court considers four preliminary and interrelated questions: (1) whether the witness qualifies as an expert pursuant to § 27-702; (2) whether the expert's testimony is relevant; (3) whether the expert's testimony assists the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. *Robinson v. Bleicher*, 251 Neb. 752, 559 N.W.2d 473 (1997); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

There is no dispute whatsoever as to Hensen's qualifications as a traffic safety engineering and accident reconstruction expert. Neither is the issue one that the probative value of Hensen's opinion is outweighed by the danger of unfair prejudice.

Further, Neb. Evid. R. 704, Neb. Rev. Stat. § 27-704 (Reissue 1995), provides that opinion testimony is "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." As such, Hensen's opinion is not inadmissible because it embraces the ultimate issue as to the proximate cause of the accident giving rise to Childers' injuries. See *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). It is also undisputed that Hensen's opinion would assist the trier of fact, which, in this case, was the trial court, to whose discretion in admitting the opinion of an otherwise qualified expert, absent abuse thereof, this court must defer.

The sole question as to the admissibility of Hensen's opinion is whether it is of probative value and thus relevant. Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995).

The record demonstrates that Hensen was in possession of such facts as to enable him to express a reasonably accurate conclusion as to the proximate cause of the accident. Hensen testified that he had extensive knowledge and expertise in the area of foreseeable or predictable driver error. He explained that predictable driver error involved an evaluation of various conditions of roadway alignment and traffic control devices to determine the percentage of drivers which, in spite of the traffic control devices, will fail to act and have an accident.

Hensen was specifically asked, based upon his investigation in this matter, to identify the actions or omissions of Unger that were relevant to his determination of proximate cause. Hensen testified that he heard Unger discuss two such acts or omissions. One was her delayed reaction to seeing the sign, and the other was her not being able to find the curve. Hensen said that he understood that Unger was alert and looking forward at the time of the accident and was not intoxicated or unable to make the proper responses due to any incapacity.

Hensen testified that Unger clearly demonstrated the difference between pure driver inattention or plain mistake, and probable driver confusion based on roadway conditions. Hensen opined that the proximate cause of the accident was the failure of the county to have in place adequate signing to ensure that the driver would not be confused by this location. His opinion was based upon reasonable engineering certainty, taking into account his understanding of the conditions that confronted Unger, the fact that the location at issue was typical of the type of area that causes driver confusion, and his knowledge of predictable driver error.

Based on the foregoing, the district court received into evidence Hensen's opinion as to the proximate cause of the acci-

dent. Even though Hensen's opinion may have been better expressed in terms of "a" proximate cause rather than "the" proximate cause of the accident, the district court did not abuse its discretion in admitting Hensen's opinion. It is true that we have ruled, in circumstances where an expert had no underlying facts or data upon which to base his or her opinion, that such opinion should be stricken. See *Fletcher v. State*, 216 Neb. 342, 344 N.W.2d 899 (1984). However, in the instant case, Hensen clearly interfaced his knowledge of predictable driver error with the facts and circumstances that existed for Childers and Unger during the early morning hours of June 24, 1993.

### 3. RESOLUTION

Thus, we conclude that the district court did not err in admitting Hensen's opinion as to the proximate cause of the accident.

### III. CHILDERS' APPEAL

### 1. EXCLUSION OF TESTIMONY

That brings us to Childers' appeal and the contention in the first assignment of error that the district court wrongly refused to permit Unger to testify as to whether she would have been able to safely negotiate the curve had it appeared as it was depicted in the computer-altered photographs described in part I above.

### (a) Scope of Review

This assignment of error is reviewed under the rule that where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by rule, not by judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in the admissibility of evidence. *Koehler v. Farmers Alliance Mut. Ins. Co., ante* p. 712, 566 N.W.2d 750 (1997); *In re Interest of Tabatha R., ante* p. 687, 564 N.W.2d 598 (1997).

### (b) Application of Law to Facts

Lay witnesses may testify in the form of opinions or inferences only when those opinions or inferences are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in

issue. Neb. Evid. R. 701, Neb. Rev. Stat. § 27-701 (Reissue 1995). A trial court is given discretion in determining whether a sufficient basis for a lay witness' opinion has been established, and such determination will not ordinarily be disturbed on appeal absent an abuse of that discretion. *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991).

But it is clear that rule 701 does not permit a lay witness to render an opinion based upon obvious speculation or conjecture. *State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983). Furthermore, the opinion must be based on the witness' perception of the facts. *Belitz v. Suhr*, 208 Neb. 280, 303 N.W.2d 284 (1981).

The opinion sought from Unger was not based on her perception of the facts, but on her viewing of computer-altered photographs for which no foundation had been laid, which had not yet been received in evidence, and which were later admitted only for the limited purpose of illustrating Hensen's opinions.

### (c) Resolution

Under those circumstances, it cannot be said that the district court abused its discretion in excluding the questioned testimony. This assignment of error thus fails.

### 2. MOTION TO DISMISS

In the second assignment of error, Childers contends both that the district court wrongly made up its mind before it heard all the evidence and that it improvidently sustained at the close of Childers' evidence the county's motion for dismissal.

### (a) Scope of Review

A motion to dismiss in a nonjury trial is equivalent to a motion for directed verdict in a jury trial. *Ethanair Corp. v. Thompson, ante* p. 245, 561 N.W.2d 225 (1997); *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996). Thus, in a court's review of the evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and he has

made a prima facie case, the motion to dismiss is to be overruled. See, *Kreus, supra*; *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996).

### (b) Application of Law to Facts

We note as an initial matter that Childers' assertion that the district court made up its mind before it heard all the evidence does not meaningfully contribute to the analysis of the issue presented. It is true that a judge acting as a fact finder on the merits should, as should any other fact finder, keep an open mind until all the evidence and the arguments of the parties have been heard, see *In re Estate of Ayers*, 84 Neb. 16, 120 N.W. 491 (1909), but the legal reality remains that upon a defendant's motion at the close of a plaintiff's case, a judge must determine whether the plaintiff has made a prima facie case; if not, the lawsuit is subject to dismissal at that point, *Schroeder v. Bartlett*, 129 Neb. 645, 262 N.W. 447 (1935). Thus, the question is simply one of determining whether the district court correctly sustained the county's motion for dismissal.

As explained in *Herman v. Bonanza Bldgs., Inc.*, 223 Neb. 474, 390 N.W.2d 536 (1986), it is important when a trial court acts as the finder of fact in an action tried without a jury not to confuse its function in ruling on a motion to dismiss with its function in adjudicating the controversy. When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997); *Hill, supra*; *Herman, supra*. On such a motion, if there is any evidence in favor of the nonmoving party, the case may not be decided as a matter of law. *Hill, supra*; *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). At that point, a court must assume that all of the evidence presented by the plaintiff is true, even when the evidence is contradicted. See *Knaub, supra*. In contrast, in rendering judgment as the finder of fact, a trial court resolves credibility issues and weighs the evidence in the same manner as does a jury. *Herman, supra*.

Childers does not argue that Unger was not negligent and that her negligence was not a proximate cause of the accident;

rather, Childers contends that the county was negligent as well and that such negligence was also a proximate cause of the accident. See *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994) (if effects of defendant's negligence actively and continuously operate to bring about harm to another, fact that active negligence of third person is also substantial factor in bringing about harm does not protect defendant from liability). In short, Childers argues that the district court was wrong in ruling as a matter of law that Unger's negligence was the sole proximate cause of the accident.

We recently addressed a county's duty with respect to the construction, maintenance, and repair of its highways and bridges in *Millman v. County of Butler*, 244 Neb. 125, 504 N.W.2d 820 (1993). In *Millman*, a passenger died when the truck in which he was riding, traveling at 10 miles per hour as it approached a bridge, slid through the railing of the bridge and fell into the creek below. The trial court found that the county was negligent in the construction and maintenance of the bridge by failing to provide adequate railings and by failing to post signs along the roadway warning of the dangers of the road and bridge and that such negligence was the proximate cause of the accident resulting in the passenger's death. In affirming, we wrote that

> the duty of care imposed [on counties] by the Political Subdivisions Tort Claims Act is "to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them while he is in the exercise of reasonable and ordinary caution and prudence."

*Id.* at 131, 504 N.W.2d at 824 (quoting *Hendrickson v. City of Kearney*, 210 Neb. 8, 312 N.W.2d 677 (1981)).

If Childers' evidence were believed, a finder of fact could reasonably find that the county had been negligent and might or might not conclude therefrom that the county's negligence contributed to Unger's failure to identify the precise location of the curve, notwithstanding her knowledge that it existed.

### (c) Resolution

That being so, this assignment of error has merit, for the district court erred in resolving the issue of the county's liability as

a matter of law by sustaining the county's motion for dismissal at the close of Childers' evidence.

## IV. CONCLUSION

Accordingly, the judgment of the district court is, as noted earlier, reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.