MICHAEL J. MCINTOSH, A MINOR, BY AND THROUGH
MICHAEL T. MCINTOSH, FATHER OF SAID MINOR CHILD,
AND MICHAEL T. MCINTOSH, APPELLANTS, V.
THE OMAHA PUBLIC SCHOOLS, APPELLEE.

578 N.W. 2d 431

Filed May 15, 1998.    No. S-97-002.

Terry M. Anderson and Gordon R. Hauptman, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellants.

Brien M. Welch, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.
## NATURE OF CASE
Michael J. McIntosh (McIntosh) and his father, Michael T. McIntosh, sued the Omaha Public Schools (OPS) for an injury McIntosh suffered on Collin Field, which was owned and managed by OPS. The McIntoshes appeal from a judgment in favor of OPS.

## SCOPE OF REVIEW
In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996); *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996) (*McIntosh I*).

## FACTS
McIntosh was a student at Omaha South High School during the 1988-89 academic year. In the fall of 1988, McIntosh played freshman football. During the season, he practiced on Collin Field.

In the spring of 1989, McIntosh attended a football clinic which was supervised by the head football coach of Omaha

South High School. According to McIntosh, the 2-week clinic served to familiarize future high school football players with the offensive and defensive schemes of the team. The clinic consisted of indoor drills in a gymnasium and outdoor no-contact drills on Collin Field.

On June 1, 1989, McIntosh seriously fractured his left leg while participating in outdoor drills on Collin Field. At the time of the injury, McIntosh was jumping to deflect a pass. McIntosh testified that upon landing, his left foot was stuck or caught and that it stayed in the same position from the time he planted it flat on the ground until the time he heard his leg break.

Since McIntosh did not look down when his foot came down, he was unable to point out the exact spot on the field where the accident occurred. He said that the general area had little grass and was "very hard and uneven" and that the condition of the field on June 1, 1989, was poor. He also testified that the bare spots in the field were "pretty much baked clay" and that they contained mounds and ruts which made the ground uneven.

The McIntoshes' case was originally dismissed by the district court, which found that McIntosh was a licensee and that, therefore, OPS had a duty to avoid only willful and wanton negligence. We reversed, stating that McIntosh was not a licensee, but, instead, an invitee and that, therefore, the district court was clearly wrong in placing the burden upon the McIntoshes to prove willful and wanton negligence on the part of OPS. We remanded the cause for a new trial with directions to apply the proper standard of care. Because the district court's factual findings in the first trial were applied under the wrong legal standard, we did not review the McIntoshes' assigned errors regarding the factual findings of the district court. See *McIntosh I.*

On remand, the parties submitted the bill of exceptions from the first trial, including the exhibits, and made oral arguments. The McIntoshes chose to stand on their original petition, which alleged that OPS was negligent because Collin Field was uneven and contained ruts which could injure a student.

The district court relied upon the factual findings which it had made in the first trial, as set out in the court's March 1, 1994, order and as recited in *McIntosh I.* The district court then applied these findings to the standard of care of an invitee as set

forth in *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). The district court noted that OPS conducted yearly maintenance of Collin Field. The maintenance consisted of spreading dirt on the field, aerating the soil, planting grass seed, and erecting a snow fence around the field to keep people out when the field was not in use. The district court found relevant the fact that with this maintenance program there had only been reports of students scraping and bruising themselves. Thus, the district court concluded that there was no evidence to support the McIntoshes' theory that OPS failed to use reasonable care to protect against broken legs or that the condition of the field was a proximate cause of McIntosh's injury.

The district court stated:

> [T]he Court finds no evidence supporting the Plaintiffs' theory that the Defendant failed to use reasonable care to protect the Plaintiff invitee against the danger of a broken leg or that the condition of the field was a proximate cause of young Plaintiff McIntosh's injury.
>
> ... [T]here was no record of complaint(s) in prior years of ruts, only of a hard and uneven surface. Had ruts been a problem before, or if there were any evidence that Defendant was aware of ruts on the field in the Spring of 1989, then it is possible that the Defendant failed in its duty to maintain the field in a safe condition. Again, if there had been record of those complaints, then the Defendant School District could reasonably foresee that a student could get his or her foot caught in a rut and suffer a serious injury. But, as stated earlier, the only testimony of ruts was from the two students who witnessed young Plaintiff McIntosh break his leg.
>
> The Court finds that there is no evidence that Defendant School District knew before June 1, 1993 of ruts, pot-holes [sic], or something in which a student's foot could get caught.

The district court entered judgment for OPS and dismissed the action.

## ASSIGNMENTS OF ERROR

The McIntoshes assign the following errors: The district court erred in (1) finding that OPS was not negligent in its

maintenance of Collin Field, (2) finding that OPS' maintenance of Collin Field was not the proximate cause of McIntosh's injury, (3) finding that OPS could not foresee that its maintenance of Collin Field created a risk of injury to McIntosh, and (4) finding that OPS was not negligent because it could not foresee McIntosh's actual injury.

## ANALYSIS

In *McIntosh I*, we concluded that McIntosh was a business invitee. A possessor of land is subject to liability for injury caused to a business invitee by a condition of the land if (1) the possessor defendant either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to a business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger, or (b) would fail to protect himself or herself against the danger; (4) the defendant failed to use reasonable care to protect the plaintiff invitee against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. *McIntosh I*; *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995).

Since the district court found that the condition of the field was not a proximate cause of McIntosh's injury, we focus on the issue of proximate cause. In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Hand v. Starr*, 250 Neb. 377, 550 N.W.2d 646 (1996).

McIntosh had the burden to prove by the greater weight of the evidence that OPS' alleged negligence was the proximate cause of his injury. However, McIntosh did not know what caused his foot to catch on the ground. He could testify only that he believed that his foot was "caught." Another witness present at the time of McIntosh's injury stated that McIntosh's foot came down in an area that was barren, hard, rutted, and had little grass, but could offer no testimony regarding whether the condition of the ground caused McIntosh's injury. Dr. Richard

Murphy, the doctor who treated McIntosh, testified that his injury was consistent with the body rotating on a leg with the foot being caught on the ground, but Murphy did not opine that the injury was caused by ruts or any other condition on the field. Based upon these facts, the district court found that McIntosh did not prove that the condition of the field was a proximate cause of his injury.

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996); *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996); *McIntosh I*.

Considering all the evidence in a light most favorable to OPS and giving every inference which can reasonably be deduced from such evidence to OPS, we cannot say that the district court was clearly wrong when it found that McIntosh had not proved proximate causation. The judgment of the district court is affirmed.

AFFIRMED.