TERRI HOWELL, PERSONAL REPRESENTATIVE OF THE ESTATE OF JOHN GREASON, DECEASED, APPELLANT, V.
DOUGLAS COUNTY, NEBRASKA, APPELLEE.
MARGARET GREASON, APPELLANT, V.
DOUGLAS COUNTY, NEBRASKA, APPELLEE.

597 N.W.2d 636

Filed Aug. 3, 1999.   Nos. A-98-522, A-98-523.

David L. Buelt and Daniel L. Rock, of Ellick, Jones, Buelt, Blazek, & Longo, for appellants.

James S. Jansen, Douglas County Attorney, Christine A. Lustgarten, and Willow T. Head for appellee.

IRWIN, Chief Judge, and MUES and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

On December 13, 1993, John Greason and his wife, Margaret Greason, were driving westbound on Pacific Street. At the time, it was raining and sleeting. Nikki Werth was traveling eastbound on Pacific Street when she lost control of her car, crossed into the westbound lane, and struck the Greason vehicle head on. John and Margaret were severely injured in the accident, and John subsequently died from his injuries. Construction work on Pacific Street had just been completed; however, work remained to be done on both shoulders. Terri Howell, personal representative of the estate of John Greason, brought this action pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1992), against Douglas County, Nebraska, to recover for injuries John Greason

received in the automobile accident. Margaret Greason also sued Douglas County for injuries she received in the accident. The matters were consolidated for trial. After trial, the trial court found in favor of Douglas County and dismissed Howell's and Margaret Greason's petitions. Howell and Margaret Greason (the plaintiffs) have timely appealed. For the reasons set forth below, we affirm.

## PETITIONS

We first note that the plaintiffs' petitions and briefs on appeal are nearly identical. Therefore, in order to avoid unnecessary confusion, we will discuss this case as if there was only one petition filed and one appeal.

In the plaintiffs' third amended petition, filed March 22, 1996, they alleged the following:

On December 13, 1993, at approximately 3 p.m., John Greason was driving westbound on Pacific Street near the intersection of 192d Street. Margaret Greason was a passenger in the car. Pacific Street is a two-lane road with one lane for eastbound traffic and one lane for westbound traffic. Werth was driving eastbound on Pacific Street when she lost control of her vehicle, crossed the center of Pacific Street, and hit the Greason vehicle head on. At the time of the accident, Pacific Street was under construction for repairs and improvements.

The plaintiffs further alleged that at the time of the accident, Werth was unfamiliar with the roadway at the site of the collision and did not have any knowledge of the condition of the highway and shoulder.

> Ms. Werth lost control of her car because she drove into the construction area without adequate warning by signs or otherwise concerning the special conditions caused by the construction activity and the new pavement which had been laid in the area and without adequate direction by signs or otherwise to reduce speed accordingly.

It was alleged that John Greason saw the Werth vehicle coming but was unable to take evasive action because of the lack of a safe shoulder.

The plaintiffs contended that Douglas County was negligent in failing to display proper construction warning signs, failing to

properly decrease the speed limit in the area of the construction site, failing to provide a reasonably safe and proper route for traffic along Pacific Street during its construction, and failing to provide safe shoulders. The plaintiffs further alleged that John Greason died as a result of the injuries sustained in the accident.

A bench trial was held January 20 through 23, 1998. The evidence will be discussed later as necessary to this opinion. The trial court found that there was a dispute as to whether an advisory speed limit was posted near the site of the accident. However, the court determined that even if the advisory speed sign was not posted, it would be pure speculation for the court to assume that Werth would have slowed down or attempted to slow down if a sign was posted. The court also found that the shoulders on Pacific Street were not completed but that John Greason could have driven onto the north shoulder. The court stated that it would not speculate on what would have happened if John Greason had driven onto the shoulder. The court held that the sole proximate cause of the accident was the negligence of Werth. Accordingly, the trial court dismissed the petition. The plaintiffs timely appeal.

## ASSIGNMENTS OF ERROR

The plaintiffs contend that the trial court erred in failing to find Douglas County negligent as a matter of law for failing to post signs requiring motorists to reduce their speed through the construction area, in not finding that Werth would have slowed down if the appropriate signs were in place, in finding that John Greason could have used the north shoulder as an escape, and in finding that any negligence on the part of Douglas County was not the proximate cause of the accident.

## STANDARD OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can rea-

sonably be deduced from the evidence. *McIntosh v. Omaha Public Schools*, 254 Neb. 641, 578 N.W.2d 431 (1998).

## DISCUSSION

In order to prevail in a negligence action, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately caused by the failure to discharge that duty. *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). A plaintiff in a negligence action is required to adduce evidence showing there was a negligent act on the part of the defendant and that such act was the cause of the plaintiff's injury. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). The mere happening of an accident is insufficient as a matter of law to prove negligence. *Id.*

At trial, the plaintiffs alleged several theories as to Douglas County's negligence. The trial court determined that even if Douglas County had been negligent, any such negligence was not the proximate cause of the accident. On appeal, the plaintiffs focus on two of the theories—the claim that Douglas County was negligent in the construction of the north shoulder and the assertion that Douglas County was negligent in failing to reduce the speed limit through the construction zone.

Before beginning our discussion, we note that when this case was originally filed, two additional parties were named as defendants. The trial court granted summary judgment in favor of those two defendants, and this court affirmed that judgment in a memorandum opinion filed May 28, 1998, cases Nos. A-97-096, A-97-097, A-97-769, and A-97-770. Douglas County frequently cites to this memorandum opinion and suggests that this court has already decided the issues raised in the current appeal. We disagree. First, Douglas County was not a party to the summary judgment proceedings. Moreover, evidence that was offered in the summary judgment proceedings was not offered at trial in the present case, and evidence that was offered at trial in the present case was not offered in the summary judgment proceedings. Accordingly, we review only that evidence offered at the trial in determining whether the trial court was clearly wrong

in determining that Douglas County was not liable for the injuries suffered by the plaintiffs.

*North Shoulder.*

Albert Klais, a licensed professional engineer, testified that one of the functions of a shoulder is to provide a space to escape potential accidents or reduce their severity. Klais opined that the construction of the north shoulder was deficient in several respects. Klais explained that the shoulder of the road should be angled slightly downward in order to permit water to drain off the roadway. However, the shoulder should not decline more than 6 inches from the pavement edge. According to Klais, the north shoulder declined more than 6 inches, and it had a lip which prevented the water from draining properly, causing ruts in the shoulder. Thus, Klais opined, the north shoulder did not provide "a safe refuge for performing an avoidance maneuver."

Jane Jochim was traveling directly behind the Greason vehicle. After witnessing the accident, Jochim safely pulled her vehicle onto the north shoulder. Jochim was also able to safely drive her vehicle off of the north shoulder. However, Jochim testified that the north shoulder had "[v]ery soft black dirt that the car would sink in anytime you left the pavement." Margaret Greason testified that immediately prior to the collision, she heard John Greason say, " 'Oh, my God, there is no place to go.' "

As we understand the plaintiffs' argument, they contend that if the north shoulder had been completed according to applicable standards, John Greason could have steered onto the shoulder and safely avoided the accident. The trial court found:

> As regards the north shoulder, it was eight feet wide. Jochim drove onto the shoulder and also drove back off of the shoulder. John also could have driven onto the shoulder. The Court cannot speculate as to what may have happened if John had driven onto the north shoulder. However, the Court does conclude that the condition of the north shoulder was just that, a condition, but was not a proximate cause of the accident.

Proximate cause is a question of fact to be determined by the trial court as fact finder, and will not be disturbed on appeal unless clearly wrong. *Eledge v. Farmers Mut. Home Ins.*, 6 Neb.

App. 140, 571 N.W.2d 105 (1997). Thus, in order to reverse the trial court's decision, we must find as a matter of law that the trial court's findings are clearly wrong. In other words, we must find that there is no sufficient factual basis to support the trial court's findings.

■ Assuming, without deciding, that the north shoulder failed to comply with applicable standards, we cannot say the trial court was clearly wrong in finding that the north shoulder was not a proximate cause of the accident. While circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of the plaintiff's injury. *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997). The trial court's findings that John Greason could have driven onto the north shoulder is supported by the evidence that Jochim was able to safely drive onto the shoulder. Additionally, evidence is not conclusively presented that John Greason would have been able to avoid the collision even if he were able to move his vehicle onto the shoulder.

*Speed.*

The evidence is undisputed that if Werth had been driving slower, she would not have collided with the Greason vehicle. The plaintiffs argue that at the time of the accident, Neb. Rev. Stat. § 39-663(7) (Reissue 1988), now codified at Neb. Rev. Stat. § 60-6,188 (Reissue 1998), required Douglas County to reduce the speed limit because Pacific Street was a " 'construction zone.' " Briefs for appellants at 8. Klais testified that he did not know whether § 39-663 required Douglas County to reduce the speed on Pacific Street, but he opined that the Manual on Uniform Traffic Control Devices (MUTCD) required Douglas County to advise drivers to slow their speed to 35 miles per hour. MUTCD has been adopted by the Department of Roads as the state's rules and regulations "to provide a uniform system of traffic-control devices on all highways within this state." Neb. Rev. Stat. § 39-698 (Reissue 1988), now codified at Neb. Rev. Stat. § 60-6,118 (Reissue 1998). Although somewhat unclear, it appears that Klais' reasoning for the reduced speed was because of an intersection near the scene of the accident. There is no dis-

pute that there was a crossroad sign warning drivers of the intersection, but the witnesses disagreed as to whether a 35-miles-per-hour speed advisory sign was attached to it.

The trial court noted that the witnesses disagreed as to whether the speed advisory sign was present at the time of the accident but found:

In connection with signage matters, and assuming that the only two signs in place on December 13, 1993, were the intersection sign . . . and the "Low Shoulder" sign just east of 192nd Street, it cannot be assumed that Werth would have slowed down, or even attempted to slow down, with a "35 MPH" sign in place . . . . This would be speculation and conjecture and is too big a leap for this Court to take. Further, even without the "35 MPH" sign on it, the top portion of [the crossroads sign] tells a driver that there is an intersection ahead, and this warns a driver, such as Werth, to slow down and to proceed with caution, which she did not do.

. . . Nebraska law in effect on December 13, 1993, provided: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. A person shall drive at a safe and appropriate speed when approaching and crossing an intersection, or railroad grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions." R.R.S. 1993 (Emphasis added).

Ultimately, it was Werth's responsibility to adjust her speed so she could maintain control of her car in the very adverse weather conditions. She was clearly traveling too fast for the existing road and weather conditions . . . and did not have her vehicle under reasonable control.

Determination of causation is ordinarily a matter for the trier of fact. *Kozicki v. Dragon*, 255 Neb. 248, 583 N.W.2d 336 (1998). Thus, in order to reverse the trial court's decision, we would have to find as a matter of law that the trial court was

clearly wrong in finding that Werth would not have heeded the reduced speed signs even if they had been in place. This we cannot do.

Werth was never called to testify that she would have slowed down had she seen the signs. Klais testified that, in general, people do heed regulatory and advisory speed signs and that that is why they are used. The plaintiffs argue that even if the court chose to ignore this evidence,

> the thought that a driver will conform to traffic signs is exactly the assumption which the law requires to be made in this case. The entire law of highway travel is premised on the notion that traffic regulatory and warning signs will be obeyed. . . . If the law did not assume that drivers would obey traffic signs and signals, the Manual on Uniform Traffic Control and common sense would not require the placement of speed limit and warning signs in danger areas.
>
> The cases of *Childers v. Phelps County, Nebraska*, 252 Neb. 945, 568 N.W.2d 463 (1997) and *Maresh v. State of Nebraska*, 241 Neb. 496, 489 N.W.2d 298 (1992) show that Nebraska recognizes this presumption.

Briefs for appellants at 11.

In *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997), the plaintiff, Crystal D. Childers, was injured when the driver of the car in which she was a passenger failed to negotiate a curve while driving late at night. The car hit a guy wire and flipped, and Childers was seriously injured. Childers sued Phelps County, alleging that the county had failed to have properly posted and maintained traffic signs on the road.

At trial, the driver of the vehicle, Shari Unger, testified that she had ridden as a passenger on the road before but had never driven a car on it at night. According to Unger, as she neared the curve, Childers warned her not to forget about the curve. Unger had not seen a curve sign until Childers warned her. Unger was unable to slow down in time to safely negotiate the curve. Unger testified that if she had "known she was approaching the sharp curve, she would have reduced her speed gradually to a speed that would have allowed her to negotiate it." *Id.* at 949, 568 N.W.2d at 467. Dr. Ronald J. Hensen, a civil engineer, opined

that the county failed to act reasonably and prudently with regard to warning motorists about the curve. According to Hensen, the curve required an "advance warning turn sign, a speed plate under the advance warning turn sign indicating what is the safe speed for driving the curve, and chevrons on the back side of the curve to show the location of the curve." *Id.* at 950-51, 568 N.W.2d at 467. The trial court sustained the county's motion for dismissal at the close of Childers' evidence.

On appeal, the Nebraska Supreme Court reversed the trial court's decision, stating, "If Childers' evidence were believed, a finder of fact could reasonably find that the county had been negligent and might *or might not* conclude therefrom that the county's negligence contributed to Unger's failure to identify the precise location of the curve, notwithstanding her knowledge that it existed." (Emphasis supplied.) *Id.* at 957, 568 N.W.2d at 471.

Contrary to the assertion of the plaintiffs in the case before us, the Supreme Court in *Childers v. Phelps County, supra,* did not hold or intimate that the trial court should have presumed Unger would have obeyed the sign. Rather, the Supreme Court merely found that in giving Childers every reasonable inference from the evidence, the fact finder *could* find that Unger would have heeded the signs.

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered *in the light most favorable to the successful party. Nichols v. County of Douglas,* 7 Neb. App. 606, 585 N.W.2d 105 (1998). Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Id.*

In the present case, the evidence was that it was sleeting and that the roads were slick at the time of the accident. The Greason vehicle and the one behind it were traveling at 25 miles per hour. There was also a sign warning eastbound drivers that an intersection was ahead. Notwithstanding, Werth was still traveling at 50 to 55 miles per hour. Given these facts, we cannot say that the trial court's factual conclusion that Werth would not have

heeded the speed signs had they been in place was clearly wrong.

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.